JOHN J. MURRAY

*v.*

J. M. DOUD & CO.

*Filed at Ottawa April 3, 1897—Rehearing denied October 8, 1897.*

1. EVIDENCE—*"bought and sold notes" are competent evidence to establish a contract.* "Bought and sold notes," such as are commonly used among brokers in making their sales, are competent evidence to establish a contract.

2. CONTRACTS—*fact that broker has no city license does not invalidate his contracts.* The fact that a broker is transacting business without a license, in violation of the city ordinance, does not invalidate contracts negotiated by him nor affect their character as evidence.

3. SAME—*action may be maintained on contract made by broker acting without a license.* The rule that an action cannot be maintained which is predicated on a transaction prohibited by law does not apply to actions on contracts negotiated by a broker acting without a license, as, while the city may punish him with a fine, it can do nothing to invalidate his contracts.

4. APPEALS AND ERRORS—*alleged improper remarks by counsel not ground for reversal, in absence of rulings.* Alleged improper remarks by counsel during argument before the jury are not ground for reversal, in the absence of erroneous rulings thereon by the court.

5. DAMAGES—*measure of damages on breach of contract to buy goods.* The measure of damages on breach by the buyer of a contract to buy goods is the difference between the contract price and the market price of the goods at the time of the breach.

6. INTEREST—*when interest is recoverable on breach of contract.* On breach by the buyer of a contract to buy goods, evidenced by "bought and sold notes," the seller is entitled to recover legal interest on the amount found due.

*Murray* v. *Doud & Co.* 63 Ill. App. 247, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

RUFUS KING, and ALLEN STORY, for appellant:

The authority of the broker must be from each to sign the identical contract. Without authority from both the

contract is not the mutual obligation of each, and is void. *Cummings* v. *Roebuck*, 1 Holt, 172; *Peltice* v. *Collins*, 3 Wend. 459; *Thornton* v. *Kenser*, 5 Taunt. 786; *Davis* v. *Shields*, 26 Wend. 349.

Persons acting in capacities prohibited by law, without a license, cannot recover compensation for such services. *Heth* v. *Green*, 73 Pa. St. 198; *Stanwood* v. *Woodward*, 38 Me. 192; *Heustis* v. *Pickands*, 27 Ill. App. 270; *Chicago* v. *Honey*, 10 id. 535; *Stevenson* v. *Ewing*, 3 Pickle, (87 Tenn.) 46; *Braun* v. *Chicago*, 110 Ill. 186; *Distilling Co.* v. *Chicago*, 112 id. 19.

Where the plaintiff cannot support his demands without relying on an unlawful agreement he cannot recover. Story on Contracts, (4th ed.) 630; 1 Parsons on Contracts, (7th ed.) 100.

A claim bottomed on an illegal contract cannot be enforced. *Simpson* v. *Bloss*, 7 Taunt. 246; 103 Pa. St. 498; *Ferry Co.* v. *East St. Louis*, 102 Ill. 560.

An action founded upon a transaction prohibited by a statute cannot be maintained. *Seidenbender* v. *Charles*, 48 S. & R. 150; *Neustadt* v. *Hall*, 58 Ill. 172; *Craiga* v. *Missouri*, 4 Pet. 410; *Nash* v. *Monheimer*, 20 Ill. 215; *Lewis* v. *Headley*, 36 id. 433.

Unless both parties to a contract are bound, so that an action can be maintained by either against the other in case of a breach, it is not a contract, and neither is bound by it. *Townsend* v. *Fisher*, 2 Hilt. 47; *Richardson* v. *Hardwick*, 106 U. S. 252; *Jenkins* v. *Williams*, 16 Gray, 158; *Quick* v. *Wheeler*, 78 N. Y. 300; *McKinley* v. *Watkins*, 13 Ill. 140; *Ervine* v. *Gerdon*, 49 N. H. 444; *McDonald* v. *Bewick*, 51 Mich. 79; *Jugla* v. *Trouttet*, 120 N. Y. 21; *Angus* v. *Watson*, 51 Cal. 620; *Railroad Co.* v. *Jones*, 53 Ill. App. 434; *Packing Co.* v. *Packers' Exchange*, 86 Cal. 574; *Butt* v. *Ellett*, 19 Wall. 545; *Olney* v. *Howe*, 89 Ill. 556; 1 Addison on Contracts, p. 34, sec. 18; *Schnell* v. *Turner*, 130 Ill. 28.

Any doubt as to the interpretation of a contract may be removed by the construction put upon it by the acts

of the parties themselves. *Wilcoxen* v. *Bowles*, 1 La. Ann. 230; *Parrott* v. *Wickoff*, id. 232.

All the negotiations between the parties to a contract, in writing, form a part of it, and must be considered in giving it a construction. *Stover* v. *Metzgar*, 1 W. & S. 269.

The construction of a contract by the parties thereto is of great weight in determining its meaning. *New York City* v. *Railway Co.* 28 N. Y. 614.

The practical construction of a contract by the parties thereto will be considered in determining their rights and liabilities in transactions under it. *Bank* v. *Jagger*, 41 Minn. 308; *Railroad Co.* v. *Anderson*, 11 Col. 293.

PECK, MILLER & STARR, for appellees:

A contract in writing, to be complete, need not show mutuality on its face. *Plumb* v. *Campbell*, 129 Ill. 106; *Jugla* v. *Trouttet*, 120 N. Y. 21.

A promise lacking mutuality at its inception becomes binding when the other party, within a reasonable time, engages to perform the contract on his part, by his beginning such performance in a way which would bind him to complete it, and by mutual performance. *Plumb* v. *Campbell*, 129 Ill. 109.

"Bought and sold notes" constitute conclusive evidence of a valid contract. *Saladin* v. *Mitchell*, 45 Ill. 79.

That broker had no license will not avoid contract between the principals. *Pidgeon* v. *Burslem*, 3 Exch. 465; *Jessopp* v. *Lutwyche*, 10 id. 614; *Smith* v. *Lindo*, 4 C. B. 395.

The measure of damages for breach of a contract to sell and deliver is the difference between the market value at the time of default and the contract price, with interest thereon. *Driggers* v. *Bell*, 94 Ill. 223.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action brought by J. M. Doud & Co. against John J. Murray, on an alleged contract by plaintiffs to sell and of defendant to buy the product of leaf

lard of the Doud packing house from November 3, 1891, to January 1, 1892, at nine cents per pound. After the alleged contract was made the price of lard declined on the market, and the defendant refused to receive six cars of lard, whereupon plaintiffs sold the lard on the market and this action was brought to recover the difference between the contract price and the amount realized on a sale at the market price. On a trial before a jury the plaintiffs recovered a judgment for $1087.16, which was affirmed in the Appellate Court.

On the trial in the Superior Court plaintiffs read in evidence the following "bought and sold notes:"

"CHICAGO, *Nov. 3, 1891.*

"Bought of J. M. Doud & Co., Boone, Iowa, (care of Lamson Bros., Bd. of Trade Bldg., Chicago,) their entire production leaf from date to January 1, 1892, at nine cents, Chicago delivery. You are to receive the leaf f. o. b. teams at any city depot or at any warehouse at Union Stock Yards, in such lots as they may ship. In the event that either party should become incapacitated in manufacturing, by destruction of premises by fire, the sale to become null and void at such date. Goods to be in prime condition on arrival in Chicago. Terms cash.

"To J. J. Murray & Co., Chicago."          L. M. PRENTISS.

"CHICAGO, *Nov. 3, 1891.*

"Sold to J. J. Murray & Co., Chicago, your entire production leaf from date to January 1, 1892, at nine cents, Chicago delivery. They are to take this leaf f. o. b. teams at city depot or at any warehouse at Union Stock Yards, in such lots as you may ship. They would like, however, that you ship in lots about 5000 pounds, when convenient to do so. In the event that either party should become incapacitated in manufacturing, by destruction of premises by fire, the sale to become null and void at such date. Goods to be in prime condition for butterine purposes on arrival in Chicago. Terms cash.

L. M. PRENTISS.

"To J. M. Doud & Co., Boone, Iowa, (care Lamson Bros., Chicago.)"

The defendant objected to the introduction of these documents in evidence, but the objection was overruled, and the decision of the court is relied upon as error.

It appears from the evidence that L. M. Prentiss was a broker in Chicago. He testified: "I negotiated this sale November 3, at Murray's office. He and I were present. I said to Murray I had this production for sale for two months at nine cents a pound. He accepted the purchase from November 3 to January 1, at nine cents a pound." It further appears from his testimony that upon making the sale the "bought and sold notes" were made out and delivered to the respective parties. The law is well settled that "bought and sold notes" executed by a broker, like those in question, are competent evidence to establish a contract. Here, Prentiss was a broker. He was empowered to sell the leaf lard that plaintiffs should produce during a specified period. He made the sale as he was authorized to do, and executed the "bought and sold notes" as evidence of the transaction. Notes of this character have been fully sustained by this and other courts. *Saladin* v. *Mitchell,* 45 Ill. 79; *Memory* v. *Niepert,* 131 id. 623.

In the *Mitchell case,* in the discussion of the question, the court said (p. 82): "The business of a factor and a broker are in many respects unlike and in some similar. They are both agents of the owner to sell property. A broker is an agent employed to make bargains and contracts between other persons in matters of trade, for a compensation commonly called 'brokerage,' or, in the language of Lord Chief Justice TINDAL, 'A broker is one who makes a bargain for another and receives a commission for so doing.' He is a mere negotiator between other parties, and never acts in his own name, but in the name of those who employ him. When he is employed to buy or sell goods he is not intrusted with the custody or possession of them and is not authorized to buy or sell them in his own name. He is a middleman, and for some purposes is treated as the agent of both parties. Where he is employed to buy and to sell goods it is the custom to give to the buyer a note of the sale, called a 'sold

note,' and to the seller a like note, called a 'bought note,' in his own name, as agent of each, whereby they are respectively bound, if he has not exceeded his authority." There is no pretense here that the broker exceeded his authority. The "bought and sold notes" were executed in the regular course of business, and we see no reason why they were not competent evidence.

It appears, however, that there was in the city of Chicago an ordinance providing that it should not be lawful for any person to exercise within the city the business of broker without a license, and it is contended that as Prentiss did not have a license from the city his acts were void. As bearing on the question counsel have cited cases holding that a broker could not recover commissions for his services as broker where he had not taken out a license. Whether a broker could, without a license, recover his commission is a question upon which the authorities are not harmonious. But conceding that counsel may be right on that question, it does not follow that a contract consummated by the broker would be void. Nor does the rule declaring that an action cannot be maintained which is predicated on a transaction prohibited by statute have any application to this case. The contract here involved was not unlawful nor was it prohibited. The mere fact that Prentiss was required to take out a license from the city and had failed to do so could not prevent him from bringing the parties together, nor did it prevent them from coming together in the sale and purchase of the commodity in question. If Prentiss violated the ordinance in failing to take out a license he might be liable to be prosecuted and fined, but that could not affect his acts so far as the rights of third parties were concerned. This court held in *Craig* v. *Dimock*, 47 Ill. 308, that while Congress had the power to require instruments valid under our State laws to be stamped, and had the consequent power to punish by fine any intentional evasion of the law, yet it had no power

to require such instruments to be stamped as a prerequisite to their validity or to their admissibility in evidence in the State courts. The principle involved in that case applies here. While the city might punish by fine for a failure to act without license, it was powerless to do anything which might invalidate a contract made by the broker.

It is claimed that the judgment should be reversed on account of improper remarks made by counsel for appellees in the closing argument to the jury. It is always the duty of the court to confine the remarks of counsel within due and proper bounds, but it is scarcely possible to lay down any general rule in regard to what an attorney shall or shall not say in an argument to the jury. Here, in the closing argument, it seems that a dispute arose between counsel in regard to whether certain evidence had been admitted for the consideration of the jury during the trial, and, as we understand the record, in this controversy the court ruled in favor of counsel for appellant. During this controversy much was said by counsel on both sides, but while objection may have been made to certain remarks, the court was not called upon to rule upon any particular language used. So far, therefore, as the ruling of the court is concerned on the question raised we perceive no error, and if the court made no erroneous ruling on the question there can be no ground of reversal.

The court gave two instructions for the plaintiffs, the second of which is claimed to be erroneous. The instruction, as we understand it, first informs the jury that if they find the issues for the plaintiffs, and that plaintiffs offered leaf lard to defendant in accordance with the terms of the contract and defendant refused to take and pay for the same, the measure of damages is the difference between the contract price and the market price of the goods in question at the time of the breach of the contract; second, that plaintiffs were entitled to interest

at five per cent on money found to be due, if the jury found money was due from defendant to plaintiffs. In regard to the measure of damages on a breach of contract, this court has held in a number of cases that the difference between the contract price and the market price is the true measure; and this seems to be the general rule, not only in this court, but in other courts and in the text books. If the "bought and sold notes" constituted a written contract, as it was held in *Memory* v. *Niepert, supra,* they did, under our statute interest was recoverable. Moreover, the recovery of interest in a case of this character is recognized and sustained in *Driggers* v. *Bell,* 94 Ill. 223, and *Plumb* v. *Campbell,* 129 id. 101.

The court, at the request of appellant, gave twelve instructions in his behalf. Several other instructions not numbered in the abstract were refused, and the ruling on the refused instructions is relied upon as error. After a careful inspection of the record we are satisfied that by the instructions given the jury were fully informed in regard to all questions of law involved in the case, and no necessity existed for giving others.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*