DELAFIELD and others, Respondents, vs. SMITH, Appellant.

*January 10 — January 31, 1899.*

*Sale by broker in his own name: Liability of principal for refusal to deliver: Commissions.*

1. If a broker who has expressly agreed with his principal to sell the goods of the latter for him on commission, contracts with third persons in his own name to sell and deliver to them such goods to be furnished by the principal, and the latter refuses to furnish them, such broker cannot recover from the principal the loss he may sustain by reason of his being obliged to buy the goods at an advanced price and fulfill the contracts himself.

2. If the principal in such a case approves the contracts but fails to furnish the goods, he will be liable to the broker for his commissions the same as if they had been furnished.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

For the appellant there were briefs by *Dunwiddie & Wheeler,* and oral argument by *B. F. Dunwiddie.*

For the respondents there was a brief by *Fethers, Jeffris & Mouat,* and oral argument by *M. G. Jeffris.*

CASSODAY, C. J.    It appears from the record that, during the times mentioned, the plaintiffs were copartners, doing business as commission merchants at New York, Chicago, St. Louis, and San Francisco; that the defendant was engaged in packing and shipping fruit from San Francisco to different parts of the country; that February 7, 1890, the plaintiffs and defendant entered into an agreement in writing, wherein and whereby the plaintiffs were made the sole and exclusive sales agents for the defendant in all the territory of the United States and Canada east of the Rocky Mountains, except Kansas City, and the defendant thereby agreed to pay them on all goods shipped by the defendant into such territory, whether sold by them or not, five per cent. commission on the selling price of all goods shipped or consigned, and, in addition thereto, all proper charges against such goods, such as freight, cartage, storage, insurance, etc., as well as interest at the rate of eight per cent. per annum on all advances on such goods; that the plaintiffs therein agreed to act as the defendant's agents in the sale of all his product of canned fruit, and to make advances against shipments or sales to the extent of seventy-five per cent. of the market or selling value; that such advances were to be made by their acceptance of the defendant's drafts with documents attached, at ten days' sight; that, so far as the then present stock on hand was concerned, the advances were to be sufficient to liquidate the amount due the Bank of California against each shipment, provided such amount should not exceed the net selling value, with commissions deducted;

that the plaintiffs therein also agreed to assume the guaranty of payment for goods after they had been delivered and accepted by the purchaser; that it was thereby mutually agreed that sales for future shipment were to be made as the defendant might direct, he holding himself liable for all claims arising from nondelivery, delay in shipment, difference in quality, short weight, or any other justifiable cause, but sales of goods, whether to arrive or spot, upon which the plaintiffs might have made advances, to be sold at their discretion; that the proceeds of sales were to be applied first to the liquidation of all charges against the goods, such as freight, cartage, storage, insurance, etc., and the commission therein provided for, and secondly to the liquidation of advances made by the plaintiffs; that the surplus of the proceeds of any sale or consignment was to be applied to the liquidation of the deficit in others, if any; that May 28, 1890, the parties entered into a new written agreement to the same effect, except that the five per cent. commission was to be "on the f. o. b. San Francisco selling price."

About January 1, 1891, the plaintiffs commenced this action on such two contracts, and the complaint alleged as a breach of such contracts that the plaintiffs had in 1890 entered into contracts for the sale and delivery of canned goods at the prices therein specified, to be furnished by the defendant, whereby the plaintiffs obligated themselves for the performance of such contracts and the delivery of such goods; that thereafter the defendant refused to supply them with the goods they had so sold and agreed to deliver; that they were obliged to, and did, go upon the market and purchase goods to fill part of the contracts so made by them; that, by reason of an advance in price, they were obliged to pay for the goods so purchased $2,604 over and above the amount for which the defendant had so agreed to furnish them and at which he had directed the plaintiffs to sell; that, as to parts of the contracts so made by them with other purchas-

ers, upon such refusals of the defendant they settled with the purchasers, and were obliged to pay, in such settlements, the difference in price between the market value at the time of settlement and at the time at which the goods should have been delivered, which difference amounted to $2,590; that they were also entitled to a commission of five per cent. upon the selling price, to wit, $255.75.

The defendant answered by way of admissions and denials, and alleged, in effect, that after he had constituted the plaintiffs his agents, and after they had sold a large quantity of goods, they violated their agreement by retaining part of the proceeds of the sales which they should have accounted for and paid over, and made unauthorized, wrongful, and unlawful charges and deductions, and wholly failed to render any account for certain sales made by them, and otherwise violated their contract with the defendant; that thereupon he promptly notified them that he would make no further shipments unless they fully accounted and paid over to him the proceeds of the sales they had wrongfully retained; that upon their refusal to so account and pay over, and by reason of the breach on their part of the agreements, he refused to make any further shipments to them. The answer further alleged, by way of a first counterclaim, that the plaintiffs had sold a large quantity of his canned goods, and received therefor $2,619.06, which they had wrongfully retained and refused to pay over; and, as a second counterclaim, that November 6, 1890, the plaintiffs purchased certain goods of him, specified in the written agreements, and, after receiving and accepting the same, except 150 cases of apricots and 550 cases of Crawford peaches, in violation of their written agreements refused to accept, receive, or pay for such apricots and peaches, by reason of which the defendant was damaged in the sum of $1,326.95. The plaintiffs replied to each of the counterclaims by way of denials.

The cause was thereupon referred to Moses S. Prichard, Esq., to hear, try, and determine; and upon the trial thereof it was stipulated, in writing, by and between the parties thereto, in effect, that the plaintiffs had sold the fruits mentioned in the complaint at the prices therein stated; that the defendant had refused to deliver the fruit, and the plaintiffs were obliged to, and did, purchase such fruit, and pay the market price and value thereof to fill such sales, and that the plaintiffs sustained loss on such sales as stated; that, as to the last five items, it was admitted that the plaintiffs sold the fruits at the prices therein mentioned; that the defendant refused to deliver the fruits, and that the plaintiffs settled with the purchasers at the market value at the time the delivery was agreed upon between the plaintiffs and the purchasers, and that the plaintiffs paid such purchasers the difference between the price the goods were sold at and the market value, in lieu of the delivery of the fruit; that the plaintiffs lost thereby the amounts stated in the complaint.

At the close of the trial before the referee, he found, as matters of fact, in respect to the causes of action alleged in the complaint, in accordance with such stipulations, and that, of such sales so made by the plaintiffs as agents for the defendant, and for and on behalf of the defendant, the defendant confirmed, approved, and ratified nine orders therein mentioned, upon which there was an aggregate loss of $3,162.50; that the plaintiffs were entitled to commissions upon such orders and sales so made, in the sum of $66. As to the first counterclaim, the referee found, as matters of fact, in effect, that the defendant was entitled to the balance upon the sale of 350 cases of Criterion peaches, shipped September 1, 1890, amounting to $395.25, with interest thereon from September 1, 1890; that the defendant was also entitled to the balance due from the New York house of the plaintiffs of $550.98, with interest thereon from September 23,

Delafield and others vs. Smith.

1890; that, as to all other items in the first counterclaim, there had been charges made by the defendant, statements rendered, balances struck, and that the defendant did not intend to charge back any of them until after the commencement of this suit; that the defendant's account of all the recharges .and the charges back of commissions, interest, freight, telegrams, and storage therein mentioned were made up by the defendant after the commencement of this action, and contrary to the contracts between the parties, and contrary to the accounts rendered by the plaintiffs and accepted by the defendant; and that as to all such items in the first counterclaim except the two allowed there was no intention on the part of the defendant to make any such charges against the plaintiffs until after the commencement of this suit; and that such items and each of them were not sustained by the proofs, and were contrary to the contracts; and that each of them was settled and determined by the parties prior to the commencement of this action.

As to the second counterclaim, the referee found, as to matters of fact, in effect, that the defendant had orders to deliver all goods actually purchased by the plaintiffs from him; that December 3, 1890, the plaintiffs notified the defendant that they would not take any more goods than they had already taken; that there was not sufficient proof as to when the balance of such goods were sold by the defendant, what prices they were sold at, what damages, if any, he sustained, what the market value was at the time the plaintiffs received the goods (if they received them at all), and that there was no basis for the allowance of any such counterclaim; that as to all of the rest of the several items of the counterclaims of the defendant, except the two items mentioned, the referee disallowed them; that the plaintiffs were entitled to recover such damages, particularly found, with interest thereon, amounting to $4,316.85; that the defendant was entitled to the reduction of such claim by reason of the

two counterclaims found in favor of the defendant, with interest thereon as found, amounting to $1,270.26; that the balance due to the plaintiffs May 29, 1896, from the defendant, after the deduction of the counterclaims allowed, was $3,046.59.

As conclusions of law, the referee found that the plaintiffs were entitled to judgment against the defendant for the sum of $3,046.59, as of May 29, 1896, with the costs and disbursements of this action. Such findings of the referee were fully confirmed by the court, and judgment ordered thereon accordingly. From the judgment entered thereon accordingly the defendant brings this appeal.

1. The theory of the complaint is that, under the agreements mentioned, the plaintiffs, as agents of the defendant, sold, in their own names, the several cases of fruit therein mentioned, to be shipped by the defendant to the parties who had purchased the same of the plaintiffs, at Bay City, Michigan, Charleston, West Virginia, Parkersburg, West Virginia, Muscatine, Iowa, Cleveland, Ohio, and Defiance, Ohio; and that after such contracts of sale by the plaintiffs, to be so delivered by the defendant, the defendant, in violation of his agreements, refused to ship any of such goods, and the plaintiffs thereby suffered loss. The stipulation mentioned is to the same effect. Undoubtedly, such refusals to ship the goods called for by such orders as the defendant had approved made the defendant liable to the plaintiffs for the amount of commissions they would have received had such goods been shipped. But the serious question recurs whether, under the agreements with the defendant, he was liable to the plaintiffs for losses on such contracts of sale which they had so made in their own names with such other parties. After careful consideration, we are constrained to hold that he was not liable for such losses. The agreements with the defendant did not authorize the plaintiffs to make contracts of sale in their own names. They were mere agents

or brokers to sell on commission all goods shipped by the defendant into the territory named. Had the defendant accepted orders taken by the plaintiffs from such other parties, then, undoubtedly, the defendant would have been liable to such other parties for any breach of such contracts of sale. But the defendant had no contract relation with such other parties. On the theory of the complaint, the defendant had no agreement with the plaintiffs except as stated. The plaintiffs' agency was founded upon and created by the express agreement of the parties. Under such agreement, they were authorized to represent and act for the defendant in his business dealings with third persons in making such sales. Mechem, Agency, § 1. A broker is an agent of his employer, and he differs from a factor in that he does not ordinarily have the possession of the property which he is employed to sell, and his contracts are always made in the name of his employer. Id. §§ 13, 927; *Edgerton v. Michels*, 66 Wis. 130, and cases there cited. On the other hand, a factor is intrusted with the possession of the goods, and may sell the same in his own name. *Id.* Thus, it is held that, where a broker sells goods without disclosing the name of his principal, he acts beyond the scope of his authority, and the buyer cannot set off a debt due from the broker to him against the demand for the goods made by the principal. *Baring v. Corrie*, 2 Barn. & Ald. 137. That case is approved by more recent cases in England and this country. *Drakeford v. Piercy*, 7 Best & S. 515, 519; *Pearson v. Scott*, 9 Ch. Div. 198, 203; *Cooke v. Eshelby*, 12 App. Cas. 271, 275; *Higgins v. Moore*, 34 N. Y. 417, 419. In this last case it was held that "authority given to a broker to sell property does not include authority to receive payment for the same, especially when the principal is known to the vendee." There is nothing in the complaint, nor stipulation, nor the findings of the court, to indicate that the agreements of February 7, 1890, and May 28, 1890, were ever

modified or changed. We must therefore hold that the plaintiffs cannot recover for any of the losses alleged in the complaint, except for the loss of commissions.

2. As to the findings of fact in respect to the first counterclaim, we are constrained to hold that they are sustained by the evidence. All items therein mentioned, except the two allowed, appear to have been fully settled and determined by the parties before the commencement of this action.

3. As to the second counterclaim, the court found that the evidence in the record failed to furnish any basis for the allowance of damages for the breach alleged. We cannot say that such findings are not supported by the evidence.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in accordance with this opinion. In taxing costs, the defendant will only be allowed for printing 100 pages.

BARDEEN, J., took no part.