DAVID LESSER *vs.* HAROLD L. SMITH ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued March 2d—decided May 10th, 1932.

*David R. Lessler,* for the appellant (plaintiff).

*Edward J. McAlenney,* for the appellees (defendants).

HAINES, J.   The finding shows that the plaintiff and others, including the defendant, in the fall of 1929, joined in forming a "pool" for the purchase and sale of securities for mutual profit.   The agreement was a verbal one and provided, among other things, that the defendant, who was a stockbroker in the city of Bridgeport, should buy and sell securities upon his own initiative on behalf of and for the benefit of the members of the pool and without advising or consulting them, and should receive a specified proportion of the profits, the balance to be divided among the other members of the pool in certain proportions.   The defendant bought and sold a large number of securities under this agreement, and on or about March 4th, 1930, the securities remaining in the pool were sold and the pool terminated.   Members of the pool, including the plaintiff, had contributed various amounts from time to time, the sums being placed in the hands of the defendant who, under the agreement, had entire control and management of the pool.   The defendant kept all the funds of the pool in his private account. The members had full confidence in his good faith and honesty and believed that he was trying to make profits for them by trading for the pool, and so left all the trading to his judgment.

The plaintiff brought this action alleging that he paid into the pool and into the hands of the defendant certain stated sums of money and certain stocks at various times; that his share of the profits upon the termination of the pool amounted to more than $2700 and that he had been paid $2100 thereof by the defendant; that he had demanded of the defendant the payment of the amounts contributed and the balance

of his profits, but had been refused. He asked for an accounting and $10,000 damages and other relief. The defendant made a general denial and filed a counterclaim setting up his version of the agreement and of the sums received from the plaintiff and alleged that he had paid certain sums to the plaintiff out of the profits of the pool as they existed at the time of the payments; that he had finally been obliged to sell all the securities in the pool for the reason that the members would not go further with it, causing a net and final loss of more than $2200, and that he had demanded that the plaintiff and the other members of the pool recompense him for the loss, but they had refused. Upon plaintiff's motion, a ledger account of the transactions of the pool was filed by the defendant, and is a part of the record before us. After hearing the evidence, the trial court concluded that the plaintiff had failed to prove his complaint and the defendant had also failed to prove his counterclaim, and entered its judgment accordingly.

The foregoing is sufficient to present one of the vital questions raised by the appeal, viz.: what legal obligation, if any, did the defendant assume in receiving the various sums paid over to him by the plaintiff for the purposes of the "pool"?

The plaintiff brought his action and prosecuted it on the theory that the defendant was his "broker" and subject to all the liabilities which a broker assumes toward a customer. The underlying feature of the relationship of a customer and his broker, is that of agency. 1 Mechem, Agency (2 Ed.) § 73; *Cadigan* v. *Crabtree*, 186 Mass. 7, 13, 70 N. E. 1033; *Delafield* v. *Smith*, 101 Wis. 664, 78 N. W. 170; *Manker* v. *Tough*, 79 Kan. 46, 98 Pac. 792; *Murray* v. *Doud & Co.*, 167 Ill. 368, 372, 47 N. E. 717; *Richardson* v. *Shaw*, 209 U. S. 365, 28 Sup. Ct. 512.

If that were the relation of the parties, it would be necessary to hold the plaintiff was the principal and the defendant his agent in carrying out the purposes of the "pool." The defendant would have been subject to the orders of the plaintiff, and the latter would ordinarily have become obligated to him for commissions for services performed as the broker. Upon the facts which have been outlined, such was obviously not the case. The defendant was jointly interested in the undertaking, supplying the judgment, knowledge and discretion necessary to carry on the venture, and the other members furnished the cash as their part of the contribution to the enterprise. Under such circumstances, this was clearly a joint adventure, the relations and obligations of which in general are those which govern a partnership. This concept of a joint adventure as distinguished from a partnership, is of comparatively modern origin and is a creation of the American courts. At common law and still in England, such an enterprise is treated as an informal partnership. It has been defined as those "special combinations of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." Schouler, Personal Property (5th Ed.) § 167a. So where two or more parties combine their property, money, efforts, skill or knowledge in some common undertaking, it has been held to be a joint adventure. *Wilson* v. *Maryland,* 152 Minn. 506, 510, 189 N. W. 437. Where one member undertakes to handle the property acquired in the joint enterprise, he assumes a fiduciary relation and a duty to deal honestly and fairly and account to his fellow members. *Dolan* v. *Dolan,* 107 Conn. 342, 349, 140 Atl. 745; *Hodgman* v. *Citizens Public Utilities, Inc.,* 110 Conn. 571, 582, 148 Atl. 658; *Wilson* v. *Maryland,* 152 Minn. 506, 510, 189

N. W. 437; *Wicks* v. *Knorr,* 113 Conn. 449, 453, 155 Atl. 816. In the absence of an agreement to the contrary, it will be presumed that the losses are to be shared in the same proportion as the profits. 33 C. J. p. 865,.§ 80; *Matter of Marvin,* 180 App. Div. 778, 786, 168 N. Y. Supp. 555. This enterprise was terminated and the pool closed, and the plaintiff became entitled to his share of the profits, if any, but it remained for him to establish his claim that profits from the venture were due him and unpaid by the defendant. It does not appear that any evidence of profits was furnished by the plaintiff, and the conclusion that he has not proved his case is conclusive unless, as he further claims, the defendant has made admissions in his pleadings which serve to change this result. These are claimed as judicial admissions, which under the general rule would generally be conclusive against the defendant. *Cassidy* v. *Southbury,* 85 Conn. 221, 223, 82 Atl. 198; *Wood* v. *Smith,* 98 Conn. 238, 240, 118 Atl. 831; *Kanopka* v. *Kanopka,* 113 Conn. 30, 35, 154 Atl. 144. These claimed judicial admissions are five in number: (1) That the plaintiff furnished a total of $9894.38 for the pool; (2) that the pool opened November 13th, 1929, rather than October 28th, 1929, as found by the court; (3) that the pool was formed to buy stocks; (4) that it was agreed that the defendant should share the profits and losses equally with the other members, and (5) that payments were made from profits as late as March 4th, 1930. If these claims were conceded and held to be binding upon the defendant, the result would not necessarily or conclusively establish the contention of the plaintiff that there was still money in the pool of which he had not received his share. It might be claimed that the fifth admission showed by inference that the operation of the pool resulted in a final profit rather than a loss.

But in the light of other evidence the court was not bound to draw that inference. 5 Wigmore, Evidence (2d Ed.) § 2597; *Kanopka* v. *Kanopka,* 113 Conn. 30, 35, 36, 154 Atl. 144.

The finding of the court that the statement shows a loss of the total investment of the parties with the exception of the amounts which they had received during its continuance, is assigned as error. In several respects the requested changes and additions to the finding could properly be allowed, but even with a finding thus amplified and corrected, no other reasonable conclusion could be reached than that reached by the trial court, that the plaintiff had failed to establish that money was due him from the pool aside from the payments which had been made.

The judgment in this case cannot be otherwise than unsatisfactory to both parties. Where men enter into a loose verbal arrangement of this character, as a pure gamble for profits, place their money under the unrestricted control of one of their number to be used at will, and where no party to the arrangement keeps any specific written record of the resulting transactions, the result is what might be fairly expected.

The decision of the trial court that the plaintiff had not established a right to any further payments, was a sound conclusion upon this record.

There is no error.

In this opinion the other judges concurred.