ALICE L. BROWER *v.* IDONAH S. PERKINS

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued May 6—decided August 2, 1949.

*Edward J. McCarthy,* with whom was *Alvin C. Breul, Jr.,* for the appellant-appellee (defendant).

*Morris Robinson,* with whom, on the brief, was *Leo Nevas,* for the appellant-appellee (plaintiff).

BROWN, J. In this action the plaintiff's complaint as amended contained five counts and claimed legal and equitable relief. The first count was for services

outside the scope of the employment of the plaintiff alleged in the fifth count. The second related to a joint adventure in the purchase and sale of property on Belden Hill in Wilton; the third to a tenancy in common of property on Charles Street in Norwalk; the fourth to the conversion of personal property of the plaintiff; and the fifth to fraud of the defendant which caused the plaintiff to enter the employment of the defendant and turn over to her all of the plaintiff's personal property, and which brought about the exploitation of the plaintiff by inducing her without adequate compensation to work long hours exclusively for the defendant, as a result of which she suffered distress of mind and impaired health and earning capacity. The case was tried to a jury, but the court excluded the first count from their consideration because the damages claimed were not within the jurisdiction of the Superior Court, and the third count because the issues were equitable. It limited their consideration of the second count to answering an interrogatory as to whether the parties entered into "a joint adventure for the purchase and sale of the Belden Hill property," and they answered "Yes." They rendered a verdict for the plaintiff of $594 on the fourth count and of $9500 on the fifth count. The defendant's motions to set aside the verdicts were denied except as to the verdict on the fifth count, which the court ordered set aside unless the plaintiff filed a remittitur of $4500, which she failed to do. Judgment was entered for an accounting on the second count, that the plaintiff recover $594 on the fourth, and that the verdict be set aside and a new trial ordered on the fifth. Both parties have appealed.

The determinative question upon the appeals as related to the fifth count is whether the jury were warranted in rendering a verdict of $9500 upon it. The material facts which the jury could properly have

found are summarized. For twenty years the plaintiff had been employed in a bank in New York City and on February 2, 1946, was receiving earnings which averaged $40 per week. The defendant, who was sixty-two years old, advertised for a middle-aged woman to act as traveling companion and chauffeur and to share housework. The plaintiff, forty-four years of age, answered the advertisement. The defendant further represented to her that the housework would be light, that much of her time would be spent in traveling, and that they would go to California almost immediately after the plaintiff came into the defendant's employ. The plaintiff accepted the proposition and started to work for the defendant on March 10, 1946. These representations and other representations made by the defendant in the course of the plaintiff's employment were false and known to be false by the defendant and were made to induce the plaintiff to act upon them, and the plaintiff did act upon them to her detriment. Thereafter, during the entire period of the employment, the plaintiff worked every day, including Sundays, with the exception of one day and part of another day, and did the work which the defendant directed, including moving heavy objects, driving a truck, mowing the lawns at three different properties of the defendant, scrubbing floors by hand with steel wool, gardening, and other menial and heavy tasks averaging fourteen hours a day.

At the commencement of her employment the plaintiff was led to move all of her furniture and belongings onto the defendant's properties. On or about May 1, 1946, she and the defendant purchased property on Charles Street, East Norwalk, for $5500, and, as her share of the venture, including taxes, the plaintiff turned over to the defendant all of her life's savings. These were in the form of government bonds having a

cash value of $3000; they were registered in the name of the plaintiff and she had not indorsed them. During the period of the plaintiff's employment she repeatedly complained about the low salary, hard work and long hours, but in response was assured by the defendant that the hard work would soon be finished, that they would go to California, and that the plaintiff would have nothing to worry about financially because the defendant would always take care of her. Throughout the employment of the plaintiff, a period of more than four months, the defendant exploited her and so completely dominated her that she was effectively shut off from seeing her husband, her father and her sister.

On or about May 1, 1946, the defendant purchased property at Belden Hill in Wilton, took title in the name of the plaintiff and told her that the property was being purchased for her. When the plaintiff's physical and mental condition became such that she could no longer continue and on July 18, 1946, had to enter a hospital for treatment, the defendant induced her to sign a deed conveying to the defendant her interest in the Belden Hill property upon the defendant's assurance that the plaintiff would receive one-half of the profits when the property was sold. When the defendant learned that the plaintiff intended to leave her employ, she refused to let the plaintiff have her furniture and other belongings unless the plaintiff signed over her interests in the Charles Street and Belden Hill properties.

On March 10, 1946, when the plaintiff began working for the defendant, she weighed 125 pounds and her health was good. As a result of the defendant's fraud and treatment of the plaintiff, she lost about twenty-three pounds in approximately three months and became so confused and nervous that she lost control of the sphincter muscles which govern the passage of

urine. After two days in the hospital, on July 20, 1946, she went to her sister's home to rest. She was then very weak and hysterical, had no control of her urine, and was nervous and jumpy. There was a strong odor of urine about her which was obnoxious to her and to everyone around her. Because of this the plaintiff was afraid and ashamed to associate with people. She was with her sister for eight weeks, during which she had to stay in bed most of the time and was not able to do any work.

At the time of trial, in April, 1948, her condition had not fully returned to normal, and at times she became nervous and upset, causing a recurrence of her urinary difficulty. Anything causing nervous stress tended to precipitate the plaintiff's trouble. The longer her urinary condition persists the more difficult it will be to cure, and satisfactory treatment cannot be undertaken until this litigation is ended. Thereafter, a course of treatment for about nine months will effect a cure, in the absence of new complicating factors. In September, 1946, the plaintiff was able to resume employment as a companion doing light housework for an elderly woman. Thereafter, up to the time of trial, she continued in such work, earning an amount somewhat larger than her net earnings while she had been working for the bank. Because of her condition she was then still unable to take any other type of employment or return to her position as a bank clerk.

As the trial court directed a new trial without limitation if a remittitur was not filed, there is no need to consider the sufficiency of the facts proven to establish a cause of action for fraud, and the sole issue for consideration under the fifth count is whether the trial court erred in holding the damages excessive in the amount of the remittitur. The plaintiff was entitled to a verdict including punitive, in addition to general

and special, damages. *Bennett* v. *Gibbons,* 55 Conn. 450, 452, 12 A. 99; *Ives* v. *Carter,* 24 Conn. 392, 405. The plaintiff properly introduced evidence of the cost of litigation to establish this damage. *Chykirda* v. *Yanush,* 131 Conn. 565, 568, 41 A. 2d 449. Expenses incurred in preparation for the trial and for witnesses, lay and expert, were $418. The jury could also have found that the cost of the services of the plaintiff's attorneys would amount to one-third of the damages collected in the action. They could have further found that the plaintiff lost wages up to the trial amounting to about $300. The deduction of the punitive and special damages from the verdict of $9500 would leave some $5600 to cover the plaintiff's general damage, which the allegations of the fifth count restrict to "great mental anxiety, humiliation and distress of mind" and to the serious impairment of "her health and earning capacity." The remittitur of $4500 ordered by the court was operative to reduce the award for these items to $2600.

There was no evidence of any impairment of earning capacity which decreased the amount she could realize for her services, beyond that referred to above as special damage. The evidence further demonstrated that her health had been so far restored by mid-September, 1946, that thereafter no reduction in earning power resulted. In fact, on August 1 she wrote the defendant offering to resume her duties with her. The jury's award of some $5600 for the only general damage alleged was undoubtedly excessive, and the court was justified in ordering a remittitur. Upon the plaintiff's appeal from this decision, it is the action of the trial court which is reviewed, and that action will not be reversed unless it clearly appears that its large discretion has been abused. *Prosser* v. *Richman,* 133 Conn. 253, 256, 50 A. 2d 85; *Cables* v. *Bristol Water Co.,* 86

Conn. 223, 225, 84 A. 928; *Loomis* v. *Perkins,* 70 Conn. 444, 446, 39 A. 797. As was pointed out in the *Loomis* case (p. 447), the trial judge "has seen the witnesses, heard their testimony, observed their demeanor on the witness stand, their manner and bearing, their intelligence, character and means of knowledge. And if while all this is fresh in his mind he sets aside a verdict, great weight would naturally be given to his action." In ordering a remittitur, a fair appraisal of compensatory damages, and not the limit of legitimate generosity, is the rule, but in no event can the court set the figure lower than that at which a jury could reasonably fix it. *Rosa* v. *American Oil Co.,* 129 Conn. 585, 589, 30 A. 2d 385. Our examination of the evidence in the light of these principles satisfies us that the court on the evidence before it was warranted in ordering a remittitur of $4500. There is no error on the plaintiff's appeal.

Upon the defendant's appeal, her claim that the court erred because the first count should "have been dismissed at the beginning of the trial as not within the monetary jurisdiction of the Superior Court" is without merit. All that appears from the finding is that the court ruled that "if that count remains as it is I will not submit that count to the jury," and that the plaintiff's request to be allowed to amend it was denied; further, the record shows that it was not submitted to the jury. The court's caution to the defendant while on the stand not to attempt to dictate to the plaintiff's counsel how he should try his case could not have materially prejudiced the defendant. In fact, considered in connection with the defendant's over-all conduct during the trial, as indicated by the transcript which we have read in considering the plaintiff's appeal, we conclude that the court used com-

mendable restraint in its comments addressed to the defendant.

The defendant has assigned error in the court's failure to set aside the verdict on the second count. As already stated, the jury's verdict upon this count was restricted to their answer "Yes" to the interrogatory as to whether the parties entered into a joint adventure in dealing with the Belden Hill property. Since the court's charge is not included in the record, its instructions upon this issue are presumed to have been correct. *Smith* v. *L. & S. Corporation*, 133 Conn. 105, 107, 48 A. 2d 239. As counsel for the defendant stated to the court at the opening of the trial, whether there was a joint adventure was a question of fact. The jury could have found that the defendant told the plaintiff she was going to buy the property for her, that she did buy it and the title was transferred to the plaintiff, that the defendant later stated that the plaintiff owned it, that both moved into the house to live, that the plaintiff did extensive work in cleaning and improving the house and grounds, that the defendant then suggested that they sell the house, that the plaintiff cooperated in showing it to prospective customers, and that, finally, because the plaintiff was going to the hospital she deeded it to the defendant upon her assurance that the plaintiff would receive one-half of the profits upon its sale, which was subsequently made. These facts are sufficient to support the jury's finding that, whatever the situation was when the property was bought, the parties later embarked upon a joint adventure for the sale of the house for a profit to be shared between them. *Dolan* v. *Dolan*, 107 Conn. 342, 349, 140 A. 745; *Lesser* v. *Smith*, 115 Conn. 86, 89, 160 A. 302. As we stated in the *Lesser* case (p. 90), "In the absence of an agreement to the contrary, it will

be presumed that the losses are to be shared in the same proportion as the profits."

The defendant contends that since the plaintiff answered "No" to the question, "If there was any loss on the venture, were you to pay one-half of the losses?" it follows as a matter of law that the parties had agreed that the losses would not be shared and that therefore there could be no joint adventure. Even assuming the weight of authority to be that a sharing of losses is essential to a joint adventure, we cannot hold that under proper instructions from the court the jury could not have found that the extent of the plaintiff's answer was to negative any express affirmative agreement to share the loss, rather than to establish a positive agreement not to do so. If the jury so found, an agreement to share the losses would be presumed, under the principle quoted above, and their finding of joint adventure would be warranted. The court did not err in failing to set aside the jury's finding upon the interrogatory. The defendant takes nothing by her assignment that the court erred in refusing to charge in accord with her request that there was no joint adventure, not only because, for the reasons we have just discussed, it was not a correct statement but also because the finding does not show what the court did charge upon this subject. See *Marks* v. *Dorkin*, 104 Conn. 660, 662, 133 A. 915.

The failure of the court to set aside the plaintiff's verdict of $594 on the fourth count and the entry of judgment thereon are claimed to have been erroneous. The gist of the allegations of the fourth count is that the plaintiff, as owner, left certain goods in the defendant's possession and that the defendant wrongfully refused to surrender them upon demand made by the plaintiff. This sets forth the essentials of a cause of action for conversion, which is a wrongful exercise of

dominion over personal property of another. *Semon* v. *Adams,* 79 Conn. 81, 82, 63 A. 661; *Gilbert* v. *Walker,* 64 Conn. 390, 394, 30 A. 132. The defendant points to the fact that the plaintiff claimed possession of the goods or, if they could not be replevied, damages, and damages for their detention. The action had none of the aspects of one in replevin, and in it the plaintiff could recover only damages for detention of the goods or for the failure of the defendant to return the goods on demand. Nothing in the record indicates that the plaintiff made, or the trial court submitted to the jury, any claim other than for simple damages for conversion, and a recovery on that basis was within the fair scope of the prayers for relief.

Several of the errors assigned concerning the court's rulings upon evidence require no mention, since the questions posed are not likely to cause difficulty on a new trial. One other ruling complained of is that the court permitted the plaintiff to testify that the defendant had never paid her $500, as the plaintiff claimed she had agreed to do, in connection with the joint adventure alleged in the second count. This was admissible as one of the facts bearing upon the claimed relationship of the parties in dealing with the Belden Hill property. Since the court's charge is not included in the record, there is no occasion to consider the errors assigned in the finding.

There is no error upon either appeal.

In this opinion the other judges concurred.