ANTONIO DiSILVESTRI *v.* THE GOLDEN CREST MOTEL
CORPORATION, INC.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 6, 1960—decided January 31, 1961

*John Keogh, Jr.,* with whom were *Dennis J. Donahue, Jr.,* and, on the brief, *Vincent X. Montanaro,* for the appellant (defendant).

*Robert B. Seidman,* with whom was *Sidney Vogel,* for the appellee (plaintiff).

MELLITZ, J. The plaintiff brought this action to recover payment for services rendered and materials furnished in the construction of a motel building for the defendant. No material correction of the finding is warranted. The plaintiff was a builder of thirty-three years' experience and had designed and built a large number of buildings in the United States and Europe. Late in 1955, after two years' work, he conceived the idea of a convertible motel building. He designed such a building and had the plans for it drawn by an architect. On the plans, his name appears only as "Builder." At no time did he represent himself to be an architect or use the title "architect." The plaintiff approached Albert and Michael Renzulli, brothers, to buy certain property in Norwalk from them, with the intention of building the motel on the site. They were unwilling to sell. Instead, they and the plaintiff agreed that a corporation would be formed to build the motel and that the three would be the shareholders. The corporation so formed is the defendant in this action. Neither of the Renzullis was skilled in the building trade. An agreement was reached with the Renzullis that the plaintiff would be paid $4000 for the plans and specifications and 2 per cent of the cost of the building for his services in supervising construction. Work was started in January, 1956, and the building was completed in June, 1956, at a cost of $150,000. The plaintiff supervised the construction and purchased most of the materials; he advanced $566.56 of his own money for materials. Michael Renzulli was in charge of the men on the job.

The plaintiff has never obtained a certificate of registration as an architect and is not a registered architect in this state. In the bill of particulars he lists, among the items for which payment is claimed, "Architectural plans and specifications . . . supervision of building project . . . Cash advanced for insulation . . . Hardware." In a special defense the defendant pleaded that the plaintiff was barred of a recovery for "alleged architectural services" by reason of his failure to comply with the provisions of the General Statutes governing the practice of architecture in this state. The court rendered judgment for the plaintiff for $4000 for plans and specifications, $3000 for supervisory services, and $566.56 for cash advanced for materials. In its appeal from the judgment, the defendant has not assigned error in the allowance of the item of $566.56.

General Statutes § 20-290 prohibits the practice of architecture in this state unless a certificate of registration is secured as provided in the statutes (c. 390). The "practice of architecture" is defined in § 20-288. The pertinent portion is quoted in the footnote.[1] A significant element in the definition, as related to the issue presented here, is the provision that there must be a rendering of, or offering to render, the services described, to "clients." Webster's New International Dictionary (2d Ed.) defines "client" as "[o]ne who employs the services

---

[1] "Sec. 20-288. DEFINITIONS. As used in this chapter . . . the 'practice of architecture' is the rendering or offering to render of service to clients by consultation, investigation, evaluations, preliminary studies, plans, specifications and coordination of structural factors concerning the aesthetic or structural design and supervision of construction of buildings or any other service in connection with the designing or supervision of construction of buildings located within the boundaries of this state, regardless of whether such persons are performing one or all of these duties . . . ."

of any professional or business man, as a customer." Here, the plaintiff was, himself, financially interested and a substantial shareholder in the enterprise. With his associates, he determined the manner in which the project would be carried out. They decided to have the corporation conduct its own building operations, using the plaintiff's plans and the services of the plaintiff and his associates. They agreed that the plaintiff would receive $4000 for the plans; that one shareholder, Michael Renzulli, would be given charge of the men on the job itself; and that the plaintiff, the only one of the shareholders skilled in the building trade, would be given the task of supervising the construction and of purchasing most of the materials. It was characteristic of the plaintiff's relationship to the enterprise that he expended his own funds for materials, as he would have done had he been engaged on a project for himself. In no sense was his activity that of one rendering advice or service to a client. The plaintiff contributed such services to the achievement of the objective of the enterprise as the parties decided he was competent to contribute. See *Lesser* v. *Smith,* 115 Conn. 86, 89, 160 A. 302. In return, the plaintiff was to receive such compensation as the parties agreed would be paid. The utilization, under an agreement that the plaintiff would be paid $4000 for them, of plans and specifications which were prepared for the plaintiff by an architect and were owned by the plaintiff did not involve the rendering of a service by him to a client, or the practice of architecture, within the meaning of the statute.

What has already been said applies equally to the supervisory services rendered by the plaintiff. In performing these services, he was not engaged in

the practice of architecture within the definition in § 20-288. In addition, the act concerning architects specifically exempts from its provisions "the superintendence by builders . . . of the construction or structural alteration of buildings or structures." § 20-298 (e). The relationship of the plaintiff to the project was that of a builder, in the sense in which the term is used in the act, and warranted a holding that the services he rendered in supervising construction came within the exemption.

There is no error.

In this opinion the other judges concurred.