[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff and the defendant are sister and brother. The plaintiff married Mr. John Grillo in 1965. Throughout the course of their marriage the plaintiff and Mr. Grillo encountered numerous financial problems, including the foreclosure of their previous home in 1976 and 1977. In 1984 their credit rating was very poor, to the extent that the plaintiff was realistically unable to obtain a mortgage to purchase a home.
In 1989 John Grillo was working for his brother-in-law, the defendant. The plaintiff wished to obtain a home for herself and her children. Mr. Grillo was owed substantial CT Page 7376 sums by the defendant as the result of commissions earned by Mr. Grillo.
Mr. Grillo approached the defendant and suggested that the defendant use the accumulated funds on the plaintiff's behalf to furnish the down payment on a house for the plaintiff. The marriage was quite stormy. Mr. Grillo was not interested in a house for himself, but did feel that his wife should have the benefit of some stability in her life. Mr. Grillo was quite accurately introspective as to his fiscal and familial periodic irresponsibility.
Mr. Grillo suggested to the defendant that if the defendant would borrow the additional funds by obtaining a bank mortgage the defendant could have all of the "write offs", and if the house were eventually sold the profits would go to the plaintiff's side of the transaction.
The plaintiff was to pay to the defendant each month the amount of the monthly mortgage, principal, interest and tax escrow and insurance, and the defendant would pay that amount to the bank. Title was to be taken by the defendant.
The property, 23 Pioneer Drive, Windsor, was purchased on October 15, 1984. The amount of $30,974 was furnished on behalf of the plaintiff, including approximately $500.00 cash and the remainder from the accumulated commissions of John Grillo. The balance of the sale price was furnished by the defendant from the $104,000 mortgage loan which he obtained from Commonwealth Mortgage Company. The property secured the loan as a first mortgage. Title was taken solely by the defendant as agreed to by the parties.
Matters proceeded as agreed upon for a number of years. The plaintiff, Mrs. Elizabeth Grillo, paid the monthly payments to the defendant from her own personal checking account, with the possible exception of one check for one month made from what appears to be a business account of Mr. Grillo. The mortgage was rewritten in 1988 to take advantage of lowered interest charges, which was commonplace in the financial climate of the late 1980s. This inured to the benefit of the plaintiff.
The defendant, in his income tax returns, was reporting the property as rental property, thereby deducting CT Page 7377 mortgage interest, taxes, insurance and depreciation. This resulted in annual net losses to him for income tax purposes. The depreciation factor provides a yearly tax advantage, but has the correlative long-term result of reducing the tax basis, thereby increasing the taxable gain if the property is later sold at a profit. Depreciation write-off can also cause a taxable gain if the property is sold for the original purchase price, or for less, by virtue of the reduced basis.
During the course of the plaintiff's occupancy of the property the plaintiff expended substantial sums in making "improvements" to the property. The evidence demonstrates that the plaintiff expended $5,550 for sprinkler system and landscaping in 1986, $1,836 in pool renovations that same year, and in 1987 $3,609.10 for glass work, $818.10 of which was a glass table top which is not a fixture. The net total of such expenditures for fixtures is $10,177.00.
Hence, the plaintiff's investment in and improvements to the property is $41,151.00.
In September 1992 the plaintiff ceased making payments to the defendant, as required of her, for the paying of the monthly charges. The defendant, rather than to allow the mortgage loan, for which he was liable, to go into default has made the missed payments from his own funds. The amount that he has paid for late charges and mortgage payments amounts to $11,021.15, as of and including April 1993. The defendant's financial investment in the venture is therefore $11,021.15 as of that date.
In March 1992 the plaintiff, realizing that she could no longer afford to pay the monthly charges, desired that the property be sold. The defendant was in agreement. On March 13, 1992 the property was listed with an agent for $251,500.00.
The defendant took the position that he should receive sufficient funds from the sale to offset the amount which he would have to pay in capital gains tax, by virtue of the reduction in basis caused by his having taken the yearly depreciation deduction over those years. He asserts that this was part of the bargain, and was the major inducement for him to be involved in the purchase of the property. The plaintiff takes the position that the "write-offs" to which the CT Page 7378 defendant is entitled were to be only interest and taxes and, hence, the defendant shall receive nothing to offset the defendant's anticipated capital gains tax.
The plaintiff claims in this action, by first count, that she has suffered emotional distress by virtue of the defendant's failure to convey the title to her. By second count that the defendant's conduct constitutes negligent misrepresentation causing the plaintiff to suffer emotional distress. By third count that the defendant has converted the property causing the plaintiff to suffer emotional distress. By fourth count that "in providing title to the property and providing $5,000 funds as security deposit the defendant has breached his oral agreement with the plaintiff."
The plaintiff claims that a trust be declared for the benefit of the plaintiff, that the trust be terminated and the property be given to the plaintiff, together with money damages and costs and attorney's fees, and such other relief as the court deems fit.
The following additional findings are made. The plaintiff did not give to the defendant, through reservation from her husband's commissions or through any other means, an additional five thousand dollars as security to be used in the event of her failure to pay monthly payments, as claimed by her. Second, contrary to the position taken by the defendant, Mr. Grillo was not acting for himself but was acting solely for his wife, the plaintiff, as her agent in entering into the agreement. This includes the furnishing of his commissions for her share of the purchase price, $30,000. The evidence herein is completely consistent with the presumption of law.
". . . powerful presumption that until the contrary definitely and explicitly appears the presumption is that the husband furnishing this money furnished it for the purpose that it should be beneficial to the wife in the shape of a gratuity to enable her to consummate that purchase. Fox v. Stanley, 94 Conn. 350, 357.
All parties, and Mr. Grillo, completely understand that this was to be used for the plaintiff's home, completely insulated from Mr. Grillo's financial and familial unreliability. It was understood that she would be CT Page 7379 responsible for making the monthly payments and making the decision as to the maintenance of the property. Mr. Grillo has never maintained that he has any interest in the property and has always, at all times, said that the property was that of his wife.
The court further finds, contrary to the position taken by the plaintiff, that the willingness of the defendant to participate in the transaction was not primarily motivated by any strong bond of love and affection between brother and sister. The relationship between the parties to this transaction is determined to be cordial and friendly but lacks the close bonds of kinship which is often referred to in the vernacular as close family ties. The court finds that the defendant would not have entered into this transaction had it not been in his specific affirmative financial interest to do so by virtue of the tax advantage of his being able to claim all of the depreciation as rental property.
The present dispute between the parties arises out of a misunderstanding on the part of both parties. The plaintiff believes that the term "write-offs" means only mortgage, interest and tax payments but not depreciation. The court finds that there was no agreement to that effect. If that were to be the case not only would the arrangement be of no financial advantage to the defendant, for the income without depreciation would of necessity exceed the expenses. Rather, the surplus of income, above expenses, would be taxable income to the defendant, thereby requiring the defendant to pay tax on income for which he derived no benefit. Bearing in mind that the agreement called for the plaintiff to receive all of the profit from any increase in property value, then without depreciation the transaction would inevitably result in a yearly and accumulated unretrievable financial loss to the defendant. The defendant would not have entered into the agreement under these circumstances.
Conversely, the defendant claims that he will now have to pay capital gains taxes by virtue of the reduced basis caused by his having taken the yearly depreciation. He wishes to receive from the sale additional sums so as to offset the capital gains tax which he will have to pay by virtue of his having taken the yearly depreciation. Otherwise, he claims, he would lose the benefit of his bargain. There was no such CT Page 7380 agreement between the parties that the plaintiff would reimburse or hold the defendant harmless from capital gains taxes resulting from depreciation recapture.
By the agreement of the parties that the defendant take the "write-offs" the parties agreed that the defendant would be entitled to receive the benefits that the tax law provides for the owner of rental real estate — nothing less but nothing more. The federal income tax law allows for depreciation and allows for losses generated by depreciation on a yearly basis to be a deduction from other income. The corollary is that the accumulated depreciation must be recaptured in the form of capital gains upon the sale of the property to the extent that the sale price exceeds the adjusted basis. Under current tax law the advantage may well be temporary as capital gains are now taxed in their entirety as income, which may not have been the case in past years where only part of the capital gains were taxed. Nonetheless, the defendant can have no greater advantage than what the tax law permits, as that is what he bargained for.
The plaintiff seeks to have a trust imposed upon the property. The court finds that there was no expressed trust. The plaintiff seeks to have a resulting trust or a constructive trust imposed upon the property.
The parties filed briefs. The case of Fox v. Shanley,94 Conn. 350 deals with circumstances where two parties made contributions to the purchase price. In that case the Supreme Court considered the prospect of imposing a trust pro rata in proportion to the financial contributions of the parties, thereby causing each of the parties to be fractional owners of the property. The case is inapplicable under the facts of the first case, for that would cause the parties to be owners in property in proportion to their respective contributions, the plaintiff having only a 32%, plus or minus, interest in the property, and enabling the defendant to obtain 68% of the profit upon sale. That would be precisely contrary to the agreement of the parties.
The concurring opinion of Justice Shea in the case of Farrah v. Farrah, 187 Conn. 495, 502, 503 is directly in point.
". . . the court found that the defendants purchased CT Page 7381 the property primarily to provide a home for the plaintiffs and their family but also to take advantage of tax consequences of such investment property."
Farrah v. Farrah, supra 504.
The opinion acknowledges that the plaintiff paid some portion of the purchase price and finds in agreement with the majority that no trust resulted therefrom.
 The true relationship between the parties in this case, is that of "Joint Adventure", referred to "at Common law and still in England . . . as an informal partnership."
Tesser v. Smith, 115 Conn. 86, 89.
 "`. . . the distinction between a partnership and a joint adventure is often very slight but that commonly the former is formed for carrying on a general business, while the latter is more often limited to a single transaction or course of transactions."
Roberts v. Weiner, 137 Conn. 668, 671.
 The relations and obligations in a joint venture are generally governed by the principles of Common-law partnership.
Tesser v. Smith, supra, p. 89.
In essence the relationship between the plaintiff and the defendants is a joint venture wherein the parties, having each contributed sums to purchase the property, did so for the financial advantage of both. For the defendant the yearly tax write-offs for depreciation each year, and for the plaintiff the eventual profit from the sale.
The inability of the plaintiff to pay the monthly sums "as rent for use and occupancy" (See Farrah v. Farrah,187 Conn. 495, 502) make it impractical for the joint venture to continue in existence.
Both parties agree that the relationship be CT Page 7382 terminated. The Court possesses the inherent power, in equity, to fashion a remedy appropriate to the circumstances of the case. See sterner v. Saugatuck Harbor Yacht Club, Inc., 188 Conn. 531, 541, 542.
The settling of business relationships of this nature are circumstances where "the relief which equity can afford is particularly appropriate and effective." Marusca v. Phillips,139 Conn. 79, 82.
It is not the function of the court to fashion a remedy such as will maximize income tax avoidance for either party.
The Court determines that it is equitable that the plaintiff should have the opportunity to become the owner of the property if she so desires.
1. The Court orders that upon the plaintiff paying to the defendant the sum of $104,000, representing a return to the defendant of his $104,000 invested in the property and the payment of the further sum of $11,021.15 in reimbursement to him of the sums he has advanced to her for use and occupancy charges to April 30, 1993, and paying to him all sums which he will have advanced to her for the use and occupancy charges subsequent to April 30, 1993, together with interest at the legal rate of 8% single interest (C.G.S. 37-1) on said advances made subsequent to April 30, 1993 the defendant shall thereupon transfer the said property, 23 Pioneer Drive, Windsor, Connecticut, to the plaintiff, free and clear of the existing mortgage and any other liens and encumbrances.
The Court orders that the defendant shall cooperate fully with the plaintiff in her obtaining whatever financing is necessary for her to obtain the funds to accomplish said transaction, provided however the defendant shall not be required to become personally obligated or financially exposed as to any such financing commitment.
2. In the event that the plaintiff does not purchase the said property as aforesaid within the period of six months from the date of the judgment, the Court orders that the property be sold to a third party for such sum as represents fair market value of said property, said sale to take place no later than one year from the date of this judgment, and CT Page 7383 that the defendant receive from the proceeds the sums set forth in paragraph one of this order, and that the plaintiff receive the remainder of said net proceeds.
The defendant shall not be required to pay any of the costs and expenses of sale from his said share of the proceeds. The court finds that the plaintiff has not proven her cause of action in the second count of the complaint (negligent misrepresentation), or in the third count (conversion — emotional distress), or in the fourth count ($5,000 security deposit) and finds for the defendant on each of these counts.
The court finds that the defendant did not breach a fiduciary duty to the plaintiff, nor was any emotional distress claimed by the plaintiff caused by any improper act of the defendant.
The court does not impose a trust, nor does the court award monetary damages. The court does not award costs to either party. The court grants to the parties the equitable relief set forth herein. The court finds that the defendant has not proven his first or second special defense.
L. PAUL SULLIVAN, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 7403