THEODORE H. MACDONALD, INSURANCE COMMISSIONER, *vs.* THE AETNA INDEMNITY COMPANY (IN RE APPLICATION OF THE TOWN OF NORTH PROVIDENCE FOR ALLOWANCE OF ITS CLAIM).

First Judicial District, Hartford, January Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A surety bond for the faithful performance by the principal of his duties as town treasurer, an annually elected officer, provided that it might be continued from year to year in case of the principal's re-election, but that liability of the surety "under such renewal shall cease one year from the expiration of the term of office covered by said re-election." *Held* that the words quoted were not to be construed as an extension of the period of basic liability for a further space of one year after the expiration of the term of office, as the plaintiff town contended, but merely as a limitation upon the time within which proceedings must be brought against the surety company in order to enable the plaintiff to recover upon the obligation.

The law cannot contemplate a remedy when there is no existing liability.

It is competent for parties to fix by express stipulation the time when liability upon their agreement shall expire; and this period may, if they see fit, be shorter than that prescribed by the statute of limitations.

Obligors in an official bond are presumed by law to bind themselves only for the term for which the principal obligor was elected or appointed, if there are no words in the instrument extending the time.

A contract, susceptible of two constructions, should be so interpreted as to render it a fair and reasonable undertaking, rather than one of an unusual and irrational character.

Argued January 12th—decided March 15th, 1916.

INTERVENING APPLICATION by the town of North Providence, Rhode Island, in receivership proceedings, praying for the allowance of its claim against the defendant company upon one of its surety bonds, brought to and tried by the Superior Court in Hartford County,

*Tuttle, J.*, upon the facts as found and reported by a committee; the court disallowed the claim, and the applicant appealed. *No error.*

*James F. McCartin* of Providence, Rhode Island, with whom was *W. Arthur Countryman, Jr.*, for the appellant (plaintiff).

*J. Birney Tuttle* and *Ralph H. Clark*, with whom was *Paul Webb*, for the appellee (defendant and its receiver).

RORABACK, J.   From the report of the committee it appears that in November, 1905, John Ogden was elected the treasurer of the plaintiff town for the term of one year ending November 7th, 1906.   He was re-elected for three successive, annual terms, the last one ending November 7th, 1909, when a successor was elected in his place.   April 2d, 1906, Ogden executed a bond in which the Aetna Indemnity Company was surety.   This bond contained the following recital: "Whereas, the said John Ogden has been duly elected treasurer of the said Town of North Providence for the term beginning the 7th day of November, 1905, and ending the 7th day of November, 1906."   When the Indemnity Company offered to renew this contract of suretyship for the second year, the town declined to accept such renewal.   In March, 1907, the claimant requested the company that the bond be continued in force for a period of one year, beginning April 2d, 1907. This was done.   Thereafter the bond was renewed for the years of 1908 and 1909.   These renewals covered the period from April 2d to April 2d, the last one expired on April 2d, 1910.   On August 1st, 1911, the Indemnity Company first received notice that a default on the part of Ogden, as treasurer of the town, had occurred.   On December 28th, 1911, the town

filed its claim with the receiver of the Indemnity Company, which correctly set forth the alleged defaults and shortages of Ogden, as treasurer, which occurred between June 8th, 1906, and July 23d, 1909. The amount of these alleged shortages was $4,013.83. The bond issued by the Indemnity Company also contained this clause: "It is further mutually understood and agreed between all the parties hereto that this bond may be continued from year to year at the option of the said John Ogden at the same or an agreed premium rate so long as the surety shall consent to receive the same, but the liability of said surety hereunder shall cease in one year from the date of expiration of the above stated term of office unless there shall have been a regular and lawful re-election or re-appointment of said principal to the said office and the said surety shall have assented to the continuance of said bond and issue an acknowledgment of receipt of premium for the further term of office in which case the liability of said surety under such renewal shall cease one year from the expiration of the term of office covered by said re-election or re-appointment."

The Superior Court held that the foregoing provision in the bond must be construed as a limitation of liability of the Indemnity Company and that all liability of the company, as surety, ceased in one year after the expiration of Ogden's last term of office. The court also held that no action could be maintained unless commenced within this period. In these rulings the plaintiff, by its reasons of appeal, contends the court erred. It is claimed that "the following words, contained in the bond, . . . 'liability of said surety hereunder shall cease in one year from the date of expiration of the above stated term of office,' do not operate as a limitation of right and time to bring claim or action on the bond, but, on the contrary, designate

an extended period of basic liability, after expiration of term of office."

The status and rights of the parties in the present case are matters of contract. The parties, by express stipulation, could limit the time when the liability of the Indemnity Company should expire. This might be for a shorter period than prescribed by the statute of limitations. *Riddlesbarger* v. *Hartford Ins. Co.*, 74 U. S. (7 Wall.) 386, 390, 19 L. Ed. 257, 259; *Fullam* v. *New York Union Ins. Co.*, 73 Mass. 61, 63; *Lewis* v. *Metropolitan Life Ins. Co.*, 180 Mass. 317, 319, 62 N. E. 369; *Paul* v. *Fidelity & Casualty Co.*, 186 Mass. 413, 416, 71 N. E. 801; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 31 Conn. 517, 529. The clause in the bond, that the liability of the surety shall cease in one year from the expiration of the stated term of office, is definite in its meaning and easily understood. "Shall cease" is "to put a stop to," "to become extinct," "to pass away." Webster's New International Dictionary. When a constitution declared that a statute "shall cease," it was held that this expression extinguished the statute as though it had been repealed. *Thompson* v. *Ruggles*, 69 Cal. 465, 470, 11 Pac. 20. In an action on a life insurance policy which provided that if the premium was not paid on the days named the policy "shall cease," the court, in its opinion, said: "The consequence of a default in the payment of the premium is defined in the policy itself. It declares that, if not paid on the days named and in the lifetime of the insured, the policy should 'cease and determine.' By this I understand that it is suspended; it ceases to bind the company and to protect the assured, and this without any act or declaration on the part of the former. It does not require a formal forfeiture. This term is often used, and, I think, inaccurately, in such cases. Nor, is the policy void in the general sense of

that term. It is voidable at the election of the company, and that election can be exercised without notice to the assured, for the reason that the policy itself is notice that his rights cease with the nonpayment of the premium. As to him it is a dead policy." *Lantz* v. *Vermont Life Ins. Co.*, 139 Pa. St. 546, 560, 21 Atl. 80, 10 L. R. A. 577, 580. If we so construe the words "shall cease" in the present case, there can be but one interpretation of the contract, namely, that the liability of the Indemnity Company became extinct within one year from the expiration of Ogden's last term of office, and the claimant had no remedy for the enforcement of its claim after the end of this period. The law cannot contemplate a remedy where there is no liability. To sustain the appellant's contention would be to hold that it was the intention of the parties that the liability of the surety for the treasurer's defalcations be extended over a period of two terms instead of one.

If it be assumed that there is such an ambiguity in the terms of the contract, so that it is susceptible of two constructions, we are then unable to find a good reason why we should sustain the appellant's contention. The authorities are uniform that, when the office is annual, the parties to the bond are presumed by law to bind themselves accordingly, if there are no words inserted in the bond clearly extending it. *Welch* v. *Seymour*, 28 Conn. 387. When the parties signed the bond in question, it appeared from the recital therein that the subject-matter of the contract was that of an office of a fixed and limited term. The stipulations in question applied only to that limited office, and under such circumstances the surety could only be held for such time as the bond plainly indicated. *Welch* v. *Seymour*, 28 Conn. 387; *King County* v. *Ferry*, 5 Wash. St. 536, 554, 32 Pac. 538, 19 L. R. A. 500, 508;

*O'Brien* v. *Murphy,* 175 Mass. 253, 255, 56 N. E. 283; *First Nat. Bank* v. *Briggs,* 69 Vt. 12, 14, 37 Atl. 231, 37 L. R. A. 845, 846. When the language of an agreement is obscure and so ambiguous that the contract is susceptible of two constructions, one of which makes it fair and reasonable, while the other makes it unusual and unreasonable, the interpretation which makes it rational and reasonable is to be preferred. The claim of the appellant is unreasonable, and could hardly have been contemplated by the parties. The language of the bond, its subject-matter, and the law, forbid any such conclusion.

The view which we have taken of this question makes it unnecessary to discuss any other question raised by the appellant.

There is no error.

In this opinion the other judges concurred.