EDWIN SMITH HODGMAN *vs.* CITIZENS PUBLIC UTILITIES, INC.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, JS.

Argued October 25th, 1929—decided January 31st, 1930.

*Homer S. Cummings* and *Raymond E. Hackett,* for the appellant (plaintiff).

*C. Milton Fessenden* and *Eugene S. Bibb,* of New York City, with whom, on the brief, were *Matthew H. Kenealy* and *Daniel E. Ryan,* for the appellee (defendant).

HINMAN, J.   The crucial question is whether, as the trial court found and held, the terms of the contract between the parties, relating to the acquisition of stock of the Derby Gas & Electric Company, were such as to render request by the defendant for the performance of services by the plaintiff in aid of such acquisition and the rendering of such requested services by the plaintiff, a prerequisite to recovery of compensation at the specified rate, or, as the plaintiff contends, the rendition of such services pertaining to acquisition of the stock of any one or more of the several companies mentioned is sufficient to entitle the plaintiff to compensation based on the Derby purchase, irrespective of whether he performed any such services with reference to the acquisition of the Derby company.

The only persons having knowledge of the intention and terms of the verbal agreement relied on are the parties directly concerned in the making of it—the plaintiff, and Allen representing the defendant corporation. The testimony of these witnesses would hardly support a finding of a contract sufficiently definite to enable the court to fix an exact meaning upon it, and therefore render it enforceable.   1 Williston on Contracts, § 37.   However, the additional light afforded by the conduct of the parties, with the application of accepted rules of construction, enables us to discover the meaning of the contract in this respect.

When an agreement is obscure and so ambiguous that it is susceptible of two constructions, one of which makes it fair and reasonable while the other makes it unusual and unreasonable, the interpretation which renders it rational and reasonable is to be preferred. *North Providence* v. *Aetna Indemnity Co.*, 90 Conn. 226, 231, 96 Atl. 926. That the parties intended that services rendered by the plaintiff in furtherance of the acquirement of stock in one company, however comparatively small in capitalization, should entitle him to compensation based, not upon the acquirement and purchase price of that company, but a percentage of the purchase price, however large, of any of the other companies the stock of which might be acquired, would be not only decidedly unusual, but so improvident on the defendant's part as to be regarded as irrational and most improbable.

The course of the pleadings is not without significance. The original complaint, dated August 16th, 1926, sought recovery for services rendered by the plaintiff in the acquisition, by the defendant, of stock in the Derby company, under a contract by the defendant employing the plaintiff to assist in bringing about such acquisition. Manifestly it did not count upon, or have reference to, employment relating to the purchase of stock in any other company or services rendered to that end. It was not until the plaintiff's evidence had been completed on the trial (November 15th, 1927) and disclosed no substantial services rendered by the plaintiff, at defendant's request, toward acquirement of the Derby stock, that the plaintiff filed a substituted first count alleging a contract covering all the companies together and allowing as compensation for services rendered as to any of them, whether purchased or not, a percentage on the price of any one of them which eventually was purchased.

Allen testified that the first discussion as to how and from whom the plaintiff was to receive compensation did not occur until June 15th, 1925, when the negotiations for the purchase of the Wallingford company were advancing, that Hodgman "naturally wanted to know what he was going to get out of it" and "I told him that in the event that the purchase was consummated a cash commission of $2\frac{1}{2}\%$ on the purchase price would be paid him." It is clear from Hodgman's own version of the talk as to compensation that his reason for seeking it from the defendant, although the purchaser, was that it would be impossible for him t obtain a commission from the seller, so that any compensation which he obtained would have to come from the defendant. The inference is legitimate that what both parties contemplated at that time was that the plaintiff's pay for services as to any one company was to be contingent upon a purchase, by the defendant, of the stock of that company, and that the amount was to depend upon the purchase price thereof. The plaintiff rendered services in the acquisition of the Wallingford stock and was paid $2\frac{1}{2}\%'$ of the purchase price.

Material assistance is given by the correspondence between the parties. In March, 1926, after the disagreement arose as to the plaintiff's right to compensation on the Derby purchase, the defendant wrote a letter to the plaintiff, stated to be in confirmation of a verbal understanding, naming a specified sum, instead of the percentage agreement, previously in effect, which plaintiff was to receive as compensation for all services rendered in connection with the purchase of the stock of the New Haven Gas Company, if such purchase be made. This special agreement is not denied by the plaintiff.

Also, on March 15th, 1926, the plaintiff wrote to Allen requesting written confirmation of their verbal

agreements and understandings with reference to compensation and in response received from the defendant, on April 23d, six letters, identical in form (except that each referred to a different company) as follows: "Our Company hereby agrees that if we purchase not less than 80% of the capital stock or all of the capital stock of the [Hartford City Gas Light Company] you are to receive as compensation for all services rendered heretofore or hereafter rendered in connection with the said purchase, 2½% on the purchase price. Payments will be made to you at the same time that payments are made for the purchase of the [Hartford City Gas Light Company] and will be made proportionately. Your services that are to be rendered to this Company in relation to the purchase of the capital stock will consist of providing the necessary information, as may be requested of you, from time to time, and the calling upon officers, directors and bankers or others that may be influential in assisting in consummating the purchase." So far as appears, these letters were acquiesced in by the plaintiff as an accurate and satisfactory statement of the agreement of the parties on the subject of the services to be rendered by him and his compensation therefor. Indeed, in the plaintiff's brief it is recognized that they reflected the terms of the original agreement. If they be so accepted they decisively indicate that the plaintiff was to realize compensation for his services as to the purchase of each company only if that purchase was consummated, and based upon the purchase price of the stock of that particular corporation. There is nothing unusual, peculiar, or inherently unjust in such an arrangement—it is common and customary in real-estate brokerage and other similar transactions. Since the defendant's letters purported to state the original agreement, so far as concerned companies purchases of

which were still in contemplation, they are also to be taken as expressing the original agreement as it related to the Derby company.

The finding as to the terms and effect of the oral agreement between the parties has adequate support in evidence as to the conversations by which it was arrived at, reinforced by the circumstances and conduct of the parties and other considerations, to some of which we have adverted. We cannot substitute for it the statement of the agreement set forth in the plaintiff's draft-finding, to the effect that the plaintiff was entitled to commission, at the specified rate, upon the price of any one of the companies purchased, irrespective of whether he was requested to render or did perform any services pertaining to the purchase of that company. The finding supports and justifies the conclusion that the plaintiff could recover, in this action, only by showing that he had, at the defendant's request, furnished services and rendered assistance in connection with the acquisition of the stock in the Derby company. The finding that the agreement did not constitute the plaintiff the exclusive agent of the defendant in acquiring stock in the companies is clearly correct.

The finding must also stand that the plaintiff was at no time requested to, and did not, provide any information or perform any services in furtherance of the purchase of the stock of the Derby company, as must the resulting conclusion that, not having rendered such services, he is not entitled to compensation on account of such purchase. Had he been requested to render, and performed, such services, his compensation, at the percentage specified by the contract would have amounted to $189,944.90.

The appellant contends, also, that the relations of the parties, under the contract, constituted a joint ad-

venture, with all the attributes pertaining thereto including the duty of each party engaged therein to observe the utmost good faith with the other, and that there was a breach of such duty by the defendant in employing Blake in the Derby transaction to the exclusion of the plaintiff. The situation here lacks, however, that essential element characteristic of a joint adventure—a contemplated division of profits, as such, upon an equal or other agreed basis, akin, in this respect, to a partnership. *Dolan* v. *Dolan*, 107 Conn. 342, 349, 140 Atl. 745; 33 Corpus Juris, p. 841 *et seq.;* 2 Words & Phrases (2d Series) p. 1232. The contract between the plaintiff and the defendant was, manifestly, one of employment, contemplating, not a division of profits accruing from a common enterprise, but compensation for services rendered, contingent upon a successful consummation of the results of the services to be compensated for, and dependent, as to amount, not upon the profits from the purchase but a commission based upon a percentage on the purchase price. The issues do not require us to pass judgment, as to its good faith, or otherwise, upon the defendant's acts in supplanting the plaintiff as to rendition of services in the Derby transaction through the employment of Blake, nor are we called upon to determine whether those acts constituted a breach by the defendant of its contract with the plaintiff entitling him to recovery in an action founded upon such an alleged breach, instead of the present action, upon the contract, for services rendered thereunder. *Howard* v. *Daly*, 61 N. Y. 362, 369; *Hostettler* v. *Mushrush*, 194 Ill. App. 58, 61; 3 Williston on Contracts, §§ 1318, 1337; 6 R. C. L., Contracts, § 389.

There is no error.

In this opinion the other judges concurred.