Arthur Wachtel, J.
This is an action to recover benefits in the sum of $552 upon a certificate of insurance issued by the defendant. The policy is a group form issued to plaintiff’s employer by the terms of which the defendant agrees to indemnify said employer’s employees for certain specified hospital and surgical expenses incurred by the employee for himself and his dependents. The employee plaintiff’s daughter, Catherine Romano, is the dependent for which the benefits are claimed. Catherine Romano was born on June 23, 1950. The policy was *210 issued December 1, 1953. The testimony presented on behalf of the plaintiff was that Catherine Romano entered Columbus Hospital on February 28, 1955; that she had a congenital dislocation of the right lap and a congenital dislocation of the left hip, and that she was operated on the right hip and a corrective open reduction was performed on March 3, 1955, and that the child continued to be hospitalized in Columbus Hospital thereafter and that on March 30, 1955, a second operation or corrective open reduction was performed on the left hip; and that the child continued to be hospitalized until April 23, 1955. It is conceded that these conditions were not injuries resulting from an accident. The question is, whether the alleged conditions in respect of each hip constituted a sickness within the meaning of the policy.
It was testified by Dr. Stella, the surgeon who performed the operations, that the condition of congenital dislocation of each hip occurred in útero, around the third or fourth month of pregnancy. At the time of the operation, there was an upward displacement of the ball or head of the femur out of the socket and riding about two inches above the socket against the side of the hip bone of the pelvis.
Dr. Stella testified that it is difficult to say whether the left hip condition or the right hip condition occurred first and he could not say whether both occurred at the same time, although it could be said that they both occurred within the same period of pregnancy, probably within a month during the early part of the pregnancy. Dr. Stella further testified that an operation for one condition is more common than for the two conditions. Both doctors agreed that these conditions could not be deemed a sickness in the sense of a condition caused by germs or virus, but Dr. Stella testified that a congenital deformity is a sickness in the sense that ‘ ‘ any deviation of any system of the body from the normal could be considered a sickness.”
Dr. Leass disagreed with Dr. Stella’s definition of sickness, and said that the condition could not be considered a sickness in the sense that a sickness is ‘ ‘ something that develops due to infection from some outside agent due to bacteria, to new growth changes in the blood vessels, and degenerative disorders due to aging.”
The policy of insurance provides coverage with respect to dependents for sickness which is defined to mean “ sickness or disease which is not covered by Workmen’s Compensation or similar legislation and which causes loss beginning while this certificate is in force as to such insured dependent.” The insurance with respect to the dependent becomes effective “ currently *211 with that of the insured employee and dependents subsequently acquired will be automatically insured. ’ ’
The policy provides with respect to dependents two major categories of benefits: First, “ dependents hospital benefits ” and second, “ dependents surgical benefits.”
Under dependent’s hospital benefits, the policy provides as follows:
“A. ROOM AND BOARD
(1) If the Insured Dependent shall suffer disability which is not due to pregnancy, childbirth or miscarriage and as a result shall be confined in a hospital beginning while this Certificate is in force as to such Insured Dependent or within three months from the termination of the insurance of such Insured Dependent and disability is continuous from the date of such termination to the date of such confinement the Company will pay the expense incurred by the Insured Employee on behalf of such Insured Dependent for room and board not exceeding the benefit rate per day applying to such Insured Dependent and for the period of such confinement not exceeding the limit as written in Section J of the Table of Benefits, under ‘Room and Board.’
“B. MISCELLANEOUS EXPENSE
The Company will also pay the expense incurred by the Insured Employe on behalf of such Insured Dependent during any one period of continuous disability for (1) all necessary miscellaneous services rendered by the hospital during a period of confinement as specified in Paragraph A.... ” “... .not exceeding, for any or all combined, the amount applying to such Insured Dependent as written in Section J of the Table of Benefits under ‘ Miscellaneous.’ ”
The policy also provides for surgical benefits. In this respect it provides that “ if by reason of sickness the insured dependent shall undergo any surgical operation set forth in the employee surgical schedule * * * and which is performed by a legally qualified physician or surgeon while this certificate is in force, as to such insured dependent, * * * the company will pay the expense incurred by the insured employee on behalf of such insured dependent for such operation not exceeding the amount set opposite such operation * * * The total amount payable hereunder to the insured employee on behalf of such insured dependent for all such operations resulting from any one injury or sickness shall not exceed the maximum surgical benefit applying to such insured dependent.”
In the Schedule of Operations it is provided as follows: ‘ ‘ dislocation (reduction) Head of femur . . . $100.00; Separation of pelvic bones — $75.00 (For open reduction, add 100%).”
Plaintiff received from the defendant for the first operation the sum of $504 covering $224 for 28 days at $8 a day for hospital benefits, $80 for miscellaneous charges and in addition, $200 for surgical benefits. He now claims additional amounts *212 for the second operation, namely, $248 for 31 days maximum for hospital care at $8 a day, $80 miscellaneous, $200 surgical, and in addition, $24 for an additional three days with respect to the first operation, or a total of $552.
The defendant contends first that the condition of the child was not a sickness within the coverage of the policy, and secondly, that even if it were a sickness the maximum has been paid upon the policy.
In view of the conflict in the medical testimony as to whether the condition was a sickness, the court is constrained to rely upon the rules of construction that have been set forth in the course of judicial decisions. In the words of Judge Cardozo, “ ‘ Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contact ’ ” (Silverstein v. Metropolitan Life Ins. Co. 254, N. Y. 81, 84, and cases there cited). “ The words should be given their ordinary, natural meaning, in view of the purpose of the contract, and to carry out its intent as that intent would be gathered by any ordinary reader seeking to ascertain the meaning of the policy.” (Goldstein v. Standard Acc. Ins. Co., 204 App. Div. 452, 455-456.
“ Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the doubt should be resolved against the company, because it prepared and executed the agreement, and is responsible for the language used and the uncertainty thereby created.” (Kratzenstein v. Western Assur. Co., 116 N. Y. 54, 59.)
“ A construction which makes the contract fair-and reasonable will be preferred to one which leads to harsh and unreasonable results. (North Providence v. Ætna Indemnity Co., 90 Conn. 229; Wigand v. Bachmann-Bechtel Brewing Co., 222 N. Y. 272; Leschen & Sons Rope Co. v. Mayflower G. M. & R. Co., 173 Fed. Rep. 855.) ” (Aldrich v. New York Life Ins. Co., 235 N. Y. 214, 224.)
“ If it is fairly susceptible of two interpretations, one of which being that contended for by the insured, it should be most strongly construed against the insurer. * * * The court should construe the policy according to the intention appearing by the words.” (Bushey & Sons v. American Ins. Co., 237 N. Y. 24, 27, 29.)
“ If there be any doubt as to the meaning of its terms, the language should be given the meaning most favorable to the insured.” (Matter of Jaabeck v. Crane’s Sons Co., 238 N. Y. 314, 322; see, also, Hart v. Travelers Ins. Co., 261 N. Y. 563.)
*213 In the words of Judge Crane, “ We have said more than once that insurance policies upon which the public rely for security in death, sickness or accident, should be plainly written, in understandable English, free from fine distinctions which few can understand until pointed out by lawyers and judges. * * * Contracts are to be interpreted in the light of the language which we commonly use and understand; in other words, our common speech. Such at least should be the rule applied to the interpretation of these policies, and which we sometimes refer to as a liberal construction. (Abrams v. Great American Ins. Co., 269 N. Y. 90; Van Vechten v. American Eagle Fire Ins. Co., 239 N. Y. 303.) ” (Mansbacher v. Prudential Ins. Co., 273 N. Y. 140, 143-144.)
“ Our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man * * * This test — the one that is applied in the common speech of men- — -is also the test to be applied by courts ”. (Lewis v. Ocean Acc. & Guar. Corp., 224 N. Y. 18, 21.)
The New Century Dictionary (Vol. II, p. 1707) defines sickness as follows:
“ Affected with any disorder of health; ill; unwell; or ailing; deeply affected with some feeling comparable to physical disorder; not in proper condition; impaired; spoiled; the state of being sick; illness.”
The condition in both hips required two independent surgical operations, confinement in a hospital for a period from February 28, 1955 to April 23, 1955; and the plaintiff’s child has been bedridden and unable to use her limbs. Upon the basis of the rules of construction applicable to this case, the condition in each hip, in the thinking of ordinary business men, should be deemed a sickness, and the court so finds.
Other clauses of the policy bear out this construction. In the schedule of operations, benefits are payable for “ removal of a birthmark.” Furthermore, the defendant has paid benefits upon the claim filed in respect of the operation on the right hip, and thereby recognized that the condition was at least to such extent covered by the policy.
The dependent’s hospital benefits clause is applicable to disability (defined as “ sickness which wholly and continuously disables * * the insured dependent”) as a result whereof insured dependent shall be confined in a hospital.
Defendant has paid plaintiff the sum of $224 for these benefits, and offers to pay an additional $24 upon the ground that the limit of the liability is 31 days, or $248. Defendant argues that there has been only one period of continuous disability. *214 However, this argument would be valid if the policy limited hospital benefits for continuous disability regardless of how many conditions of sickness or disease the insured dependent sustained. But the policy does not so provide. Accordingly, the court finds that plaintiff is entitled to hospital benefits for an additional 3 days at $8 a day or $24 with respect to the congenital dislocation of the right hip, and 31 days at $8 a day or $248 for the congenital dislocation of the left hip.
The next question arises with respect to the claim for miscellaneous expense. In this respect, the policy provides that the company will pay the expense incurred by the insured employee on behalf of such insured dependent “ during any one period of continuous disability for all necessary miscellaneous services rendered by the hospital during a period of confinement as specified in paragraph A (namely, the paragraph entitled ‘ Room and Board ’) ” not exceeding $80.
This amount has been paid by the company in respect to the first operation. Here again there is no prohibition against payment in respect of any additional sickness. Accordingly, the court finds in favor of the plaintiff on this claim, in the amount of $80.
In respect of plaintiff’s claim for surgical benefits, the maximum payable is $200 for each operation. The policy specifically provides that the total amount payable “ for all such operations resulting from any one injury or sickness shall not exceed the maximum surgical benefit.” This provision permits, by failure to exclude, payment for any operation resulting from any other sickness. Accordingly, the court finds in favor of the plaintiff in respect of this claim in the sum of $200.
Judgment for plaintiff for $552, with interest from April 23, 1955.