[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION TO STRIKE SECONDREVISED SPECIAL DEFENSE
This action, commenced via a two-count complaint dated August 10, 1990, claims damages in connection with injuries suffered by the plaintiff, John Doe, M.D., when the plaintiff became infected with HIV, the virus causing AIDS, as the result of his having been stuck by a hypodermic needle at Yale-New Haven Hospital on August 18, 1988 while in the sixth week of Yale University's medical residency program. The plaintiff thereafter applied for and received workers' compensation benefits from the intervening plaintiff, Yale-New Haven Hospital. In this action, the plaintiff alleges that his injuries were as the result of negligence on the part of the defendant University in failing to properly train and supervise him in the particular procedure that he was performing at the time of the incident.
This case, in which a jury was selected in early November and in which the evidence is schedule to commence on December 2, 1997, has produced a flurry of last minute would-be dispositive motions on which this court heard oral argument on November 17, 1997. The court decided the plaintiff's motion for summary judgment as against the intervening plaintiff on November 26, 1997. It decided the defendant's motion for summary judgment on November 28, 1997. The present motion to strike is the last of CT Page 13777 these three motions.
The University filed a Second Amended Answer and Revised Special Defense to Counts I and II[1] on October 16, 1997, asserting that it is immune from suit under the exclusivity provision of General Statutes Sec. 31-284(a) because it was engaged allegedly in a joint adventure, venture, enterprise or undertaking with Dr. Doe's employer, Yale-New Haven Hospital. The plaintiff has moved to strike this Second Special Defense based on its contentions that:
 1) joint ventures do not come within the definition of "employer" as defined in General Statutes Sec. 31-275(10);
 2) The University was not an employer because it did not pay Dr. Doe for his services;
 3) The University is not entitled to immunity because it did not obtain worker's compensation insurance as required by General Statutes Sec. 31-284(b);
 4) The University is not a joint venturer because it has failed to allege the necessary element of a profit motive in its affiliation with the Hospital regarding the operation of the residency program; and
 5) Dr. Doe was not employed within the scope of the operation of the residency program since he was a student not a teacher.
There are numerous facts in dispute regarding the exact nature of the affiliation between the University and the Hospital with respect to the residency program. At oral argument and in its pleadings, however, the University has acknowledged that the affiliation was not for profit, that the Hospital, rather than the University, was Doe's employer and paid his salary, and that the University neither procured, contributed to, nor reimbursed the hospital for its worker's compensation coverage with respect to Dr. Doe.
"The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to CT Page 13778 state a claim upon which relief can be granted.'" NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Id., 215. The motion "admits all facts well pleaded." Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989). A motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original.) Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). Further, the court must construe the facts in the pleadings which are the subject of the motion to strike in the light most favorable to the pleader. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988).
In its Second Special Defense, the University claims immunity from suit pursuant to General Statutes Sec. 31-284(a), which provides, in pertinent part:
 An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter.
Because General Statutes Sec. 31-284(a), affords immunity from suit only to "employers" who comply with the provisions of subsection (b), it is necessary to look at the definition of that term. General Statutes Sec. 31-275(10) defines "employer" for the purposes of the Workers' Compensation Statutes as follows:
 "Employer" means any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public CT Page 13779 corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . .
The University has acknowledged that it was not Dr. Doe's direct employer but claims that it is entitled to the same immunity by virtue of its having engaged in a joint venture, enterprise or undertaking with the Hospital in the operation of the residency program.
The statute defining "employers" does not specifically include joint ventures, enterprises or undertakings. A fundamental rule of statutory construction is that statutes in derogation of the common law are to be strictly construed.McKinley v. Musshorn, 185 Conn. 616, 621 (1981). The Workers' Compensation Statutes are in derogation of the common law since the "compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." Mingachos v. CBS, Inc., 196 Conn. 91, 97
(1985). "No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." See State v. Nugent, 199 Conn. 537, 548 (1986);Carl J. Herzog Foundation v. University of Bridgeport,243 Conn. 1 (1997); see also Pagani v. BT II, Limited Partnership et al.,24 Conn. App. 739 (1991); Zotta v. Burns, 8 Conn. App. 169, 173 (1986).
Although the legislature has not included joint ventures within the statutory definition of "employer" for worker's compensation purposes, it has specifically included joint ventures in the definitions of such terms as "firm," "person," or "sponsor" for the purposes of other statutes. See e.g. General Statutes Secs. 4b-55 and 13b-20b (includes joint venture, along with partnership and corporation, in the definition of "firm"); General Statutes Sec. 7-482 (includes joint venture, along with partnership and corporation in the definition of "sponsor"); General Statutes Sec. 16-50i (includes joint venture, along with partnership and corporation, in the definition of "person"); General Statutes Sec. 16-280a (includes joint venture, along with partnership and corporation in the definition of "person"); General Statutes Sec. 19a-279a (includes joint venture, along with partnership and corporation, in the definition of "person"); Sec. 20-571 (includes joint venture, along with partnership and CT Page 13780 corporation, in the definition of "person"); General Statutes Sec. 22a-115 (includes joint venture, along with partnership and corporation, in the definition of "person"); General Statutes Sec. 32-34 (includes joint venture, along with partnership and corporation, in the definition of "person"); General Statutes Sec. 34-301 (includes joint venture, along with partnership and corporation, in the definition of "person,"); General Statutes Sec. 35-51 (includes joint venture, along with partnership and corporation, in the definition of "person"); General Statutes Sec. 47-91 (includes joint venture, along with partnership and corporation, in the definition of "real estate syndicate"); General Statutes Sec. 47-202 (includes joint venture, along with partnership and corporation, in the definition of "person"); General Statutes Sec. 49-8a (includes joint venture, along with partnership and corporation, in the definition of "person"); General Statutes Sec. 51-351b (includes joint venture, along with partnership and corporation, in the definition of "person").
Because the legislature has shown that it is aware of the significance of including the concept of joint venture in certain definitions and has done so on numerous occasions, its failure to do so in the context of the definition of "employer" should not be viewed as an oversight. When drafting statutes, the legislature is presumed to act intentionally and with a full breadth of understanding of other statutes and of case law. Doddv. Middlesex Mutual Assurance Co., 242 Conn. 375 (1996);Commission on Human Rights Opportunities v. Truelove Maclean,Inc., 238 Conn. 337 (1996). The maxim, inclusio unius estexclusio alterii, the inclusion of the one implies the exclusion of the others, should therefore apply to this situation. By including joint ventures in some definitions but not in this one, the legislature has impliedly signified its intention to exclude it.
Notwithstanding the legislature's exclusion of joint ventures from the definition of "employer", the defendant has directed this court's attention to numerous cases in other jurisdictions which have held that an employee of joint venture or enterprise receiving workers' compensation benefits for a work-related injury cannot bring a tort action against another member of the joint venture or enterprise. Indeed, the parties have not directed this court's attention to any published case that has specifically reached a contrary conclusion. Before addressing the cases cited by the defendant, however, it is first necessary to examine the elements of a joint venture. CT Page 13781
Our Supreme Court has defined a joint venture as defined as "a special combination of two or more persons who combine their property, money, effects, skill and knowledge to seek a profit jointly in a single business enterprise without any actual partnership or corporate designation." Electronic Assoc., Inc. v.Automatic Equip. Devel. Corp., 185 Conn. 31, 35 (1981). The relationship between contracting parties cannot amount to a joint venture unless the parties so intend. Stone v. First WyomingBank, 625 F.2d 332, 340-41 (10th Cir. 1980); First Mechanics Bankv. Commissioner of Internal Revenue, 91 F.2d 275, 278 (3d Cir. 1937). The plaintiff contends that under Connecticut law, the presence of a profit motive is an essential element of a joint venture, as is the contemplated division of profits. Wall v.Wason, 146 Conn. 32 (1958); Hodgman v. Citizens Public Utilities,110 Conn. 571 (1930); Marwin v. Production Systems, Ltd. v. Pratt Whitney Co., 140 B.R. 327, 330 (D.Conn. 1992). The University has acknowledged that there was no profit motive in its affiliation with the hospital and that its common purpose with the hospital was to educate and train participants in the program.
The defendant has not been able to support with case law its suggestion that its affiliation with a hospital for purposes of its residency program amounts to a joint venture for purposes of worker's compensation law. To the contrary, in Trustees ofColumbia University v. Columbia/Health Care, 964 F. Sup. 733
(S.D.N.Y. 1997), the court described, albeit in dicta, Columbia University's alliance with The Presbyterian Hospital to form the world's first academic medical center with the goals of securing the best possible medical treatment for the sick and injured and providing high quality medical education and research. Despite their affiliation, the entities remained separate and were not found to be a joint venture or enterprise. See, also, GlobalCredit Services, Inc. v. AMISUB, 244 Neb. 681, 508 N.W.2d 836
(1993) (No joint venture between the hospital and the university.); Dillard v. Rowland, 520 S.W.2d 81 (Mo.App. 1974) (An affiliation contract between a university medical school and a private hospital was not a joint venture because there was no right to control the operations of the other entity.)
The defendant has noted that the precise terms of the affiliation between the university and the hospital are questions of fact, not determinable within the framework of a motion to strike. This is true, and the management of this issue would CT Page 13782 certainly have been made easier if the special defense had been interposed earlier so that, with proper discovery, this issue could have been decided with no facts in dispute in the context of a motion for summary judgment. Time has not permitted such a luxury, however, so this court must determine, within the limited context of those facts which are found in the pleadings or otherwise conceded, whether the defendants have interposed a viable special defense as a matter of law. In that regard, the court notes that the University has acknowledged that the hospital, and not the university paid the plaintiff's salary. Moreover, the University has made no claim that it has complied with the provisions of General Statutes Sec. 31-284(b), which provides in pertinent part:
 Each employer who does not furnish to the chairman of the Workers' Compensation Commission satisfactory proof of his solvency and financial ability to pay directly to injured employees or other beneficiaries compensation provided, by this chapter shall insure his full liability under this chapter . . . in one or more of the following ways: (1) By filing with the Insurance commissioner in form acceptable to him security guaranteeing the performance of the obligations of this chapter by the employer; or (2) by insuring his full liability under this part . . . in any stock or mutual companies or associations that are or may be authorized to take such risks in this state; or (3) by any combination of the methods provided in subdivisions (1) and (2) of this subsection . . . If the employer fails to comply with the requirements of this subsection, an employee may bring an action against such employer for damages on account of personal injury sustained by such employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained . . .
The University neither paid Dr. Doe's salary nor did it secure workers' compensation coverage on his behalf. Thus, it did not comply with the terms of General Statutes 31-284(b). CT Page 13783
Returning to the cases cited by the defendant in support of the proposition that a joint venture should be viewed as an employer for purposes of immunity under a worker's compensation statute, it is apparent that each of these cases has material distinctions from the present controversy. In Boudreaux v. TheSandstone Group, 1997 WL 289867 (Terr. V.I.), for example, the definition of joint venture included a profit motive, and the joint venture involved in the case was for profit; In Anderson v.Steurer, 391 S.W.2d 839 (Mo. 1965), the activity in question was for profit and the concept of a joint venture was held to apply only to situations involving a single transaction; In Lawler v.Dallas Statler Hilton, 793 S.W.2d 27 (Tex.App. 1990), the court noted that Texas law requires profit motive in order for an affiliation to be construed as a joint venture; In Papp v. RockyMountain Oil and Minerals, Inc., 769 P.2d 1249 (Mont. 1989), although the court's definition of joint venture did not expressly include a profit motive, it is clear that the venture in that case had such a motive. Moreover, the court cited evidence of the fact that one party had reimbursed a portion of the worker's compensation insurance premiums paid by the other party in the joint venture; In Haertel v. The Sonshine CarpetCompany, 757 P.2d 364 (Nev. 1988), the court cited the presence of a profit motive; In Vincent v. Lake Charles Refining Company,434 So.2d 170 (La.App. 1983), the court provides no information about its definition of joint venture, although it is apparent that the one involved in this case was for profit. Moreover, the statute defining "employing unit" is extremely broad; In Boatman v. Hyman Construction Company, 276 S.E.2d 272
(Ga.App. 1981), the concept of a joint venture included the requirement of a profit motive; In Conner v. El Paso Natural GasCompany, 599 P.2d 247 (Ariz.App. 1979), although not specifically discussed, it is apparent that a profit motive was present. Moreover, the operating agreement between the entities making up the joint venture provided for a sharing of the costs of the operation, which specifically included wages and worker's compensation insurance premiums; In Cook v. Kiewit Sons and Co.,386 P.2d 616 (Utah 1963), the agreement between the companies comprising the joint venture included an agreement to share profits and losses; In Long v. Springfield, 327 P.2d 421 (Ore. 1958), the joint venture involved a profit motive.
In Dang v. St. Paul Ramsey Medical Center, Inc.,490 N.W.2d 653 (Minn.App. 1992), the court held that there was a joint enterprise between a hospital and a corporation that had agreed to provide all of the medical staff to the hospital for profit. CT Page 13784 In County of Riverside v. Loma Linda University, 118 Cal.App.3d 300,173 Cal.Rptr. 371 (1981), the court did note that the term "joint enterprise," which is used in the noncommercial context, is used interchangeably with the term "joint venture" and "courts have not drawn any significant legal distinction between the two" doctrines. However, the court went on to find that the University and the county, which had sued the University for indemnification for half of the costs of a settlement that the county had paid for the negligence of a medical resident providing medical care at the county's hospital, were not joint venturers with respect to the care and treatment of patients.
Berger v. Mead, 338 N.W.2d 919 (Mich.App. 1983), however, a case which does involve a not-for-profit affiliation in the worker's compensation context, is a bit of a puzzler. The opinion begins, tantalizingly:
 Occasionally, we on this Court find some opinions difficult to write. A party's injury can so strongly call for compensation that we feel strongly inclined to at least allow the case to go to the jury. Unfortunately, as in this case, the law is too clear on the subject. The Legislature has clearly preempted this area thus giving us very little leeway.
Id. at 921. The case involved a police officer employed by one department who was shot during a joint training exercise by police officers employed by another department. The intermediate appellate court applied a somewhat tortured "economic reality" test, which has never been utilized in Connecticut, to determine that both the training unit and the officer's own department were the plaintiff's employers. Although it defined "joint venture" as the undertaking of a single project for profit, the court went on to note that a non-commercial joint enterprise could qualify as an employer under the broadly worded Michigan statute that included within the definition of employer "any other entity . . . that employs one or more persons on a salary, bonus, wage, commission or other basis, whether or not the employer is in a business . . ." Our statute, of course, is not nearly as broad, and this court believes that this case would have been decided differently had it arisen in Connecticut.
The defendant does note that some courts outside of Connecticut have defined "joint venture" without requiring a CT Page 13785 profit motive. See, e.g., Fried v. United States, 579 F. Sup. 1212,1223 (N.D. Ill 1983) (definition of joint venture does not require a profit motive); Andrulonis v. U.S., 724 F. Sup. 1421,1482 (N.D.N.Y. 1989) (defining joint enterprise without reference to profit motive); Rhodes v. Sunshine Mining Co., 742 P.2d 417,421 (Idaho 1987) ("while a provision for sharing losses is important in construing an agreement for a joint enterprise, it is not essential and neither an agreement to share profits nor losses is conclusive in the construction of the contract, but the intention of the parties controls."). In fact, several courts have considered joint ventures, enterprises and undertakings to be essentially interchangeable. See, e.g., Nelson v. Fulkerson,286 S.W.2d 129, 130 (Tex. 1956) ("joint venture, joint adventure and joint enterprise [are] often used interchangeably and mean . . . the same thing"). None of these, however, have done so in the context of defining "employer" for worker's compensation purposes.
Kalnas v. Layne of New York Company, Inc. v. EmceeConstruction Company, Inc.), 414 A.2d 607 (N.J.Super. 1990), cited by the defendant support its claim that it is entitled to immunity as a joint venturer with the Hospital, actually did not bar the plaintiff, an employee of one joint venturer, from suing another joint venturer on that basis. The court denied plaintiff's claim on other, unrelated ground but noted that as to whether one joint venturer can be deemed the employer of all employees engaged in work of the joint venture, that decision "must clearly depend on particular facts and circumstances surrounding the joint venture." The court found that the individual joint venturers retained their own identities and permitted the plaintiff to sue the one who did not employ her.
In Hudson v. A.C.S. Co., Inc., et al., 535 A.2d 1361
(Del.Super. 1987), the court looked to Delaware law to determine whether an employee of one joint venturer could sue the other. The court held that, if one party did not bear his share of the losses and expenses related to employees, then there would be no immunity for that party. In accordance with that decision, the University here would not be immune from suit because it has acknowledged the lack of a profit motive and the fact that it did not compensate Dr. Doe or insure him for work related injuries.
The University seeks the immunity offered by the worker's compensation statutes without having undertaken any of the obligations that would entitle it to such immunity. It has CT Page 13786 alleged in its Second Special Defense that the scope, or common purpose, of the operation of the residency program was to educate and train students participating in the program. Dr. Doe's only participation in the residency program at the time of her injury was as a student. He was not, therefore, involved in the operation of the program to educate and train. Dr. Doe was the object of the program, not its operator, and the University was his teacher, not his employer.
Dr. Doe's only employment was by the Hospital for the purpose of treating its patients. His injury did not occur while performing the business of the affiliation between the University and the Hospital, and, the University is therefore not entitled to immunity from suit under General Statutes Sec. 31-284.
For all of the above reasons, the plaintiff's motion to strike is granted.
Jonathan E. Silbert, Judge