[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff purchaser has instituted suit against the defendant retail seller of automobiles on the ground of conversion of the plaintiff's property. His second count is CT Page 8570 based on breach of contract and the third count is a claim under CUTPA, 42-110g C.G.S. While Emanuel Dragone (Emanuel) is a named defendant in the writ, the first count and second count describe the defendant as Dragone Classic Motorcars, Inc. (Motorcars) and alleges nothing about Emanuel Dragone only that action in the matter was taken by the corporate defendant. The third count under CUTPA only alleges as to Emanuel that he and the corporate defendant violated CUTPA, it contains no allegations of his acting or having an interest in the alleged contract. The answer admits that the defendant Motorcars sells at retail, automobiles; that on March 4, 1987 the plaintiff and defendant Motorcars entered into an agreement for the plaintiff to purchase a 1984 Cobra Replica automobile from Motorcars; and that the purchase price was $35,000.00. Motorcars denies that the plaintiff paid $35,000.00 and that it converted the plaintiff's automobile. To the first count the defendant Emanuel enters a general denial. Motorcars enters the same answer to the second count and further denies the breach of contract. Motorcars also enters the same answer to count three and denies a violation of CUTPA. Motorcars' amendment to add a counterclaim and setoff for $16,209.50 was denied by the court when it was attempted to be filed on the date of trial July 23, 1992, since the case was commenced on November 7, 1988 almost four years earlier.
The facts are found as follows. The plaintiff contacted the defendant Motorcars on March of 1987, spoke with Emanuel about a 1984 Ford Cobra Replica automobile and a week after that first contact signed an agreement to buy the car for $36,000.00 plus the sales tax and the other usual costs of such sales. He paid $3,000.00 cash, the Connecticut National Bank (Bank) financed most of the remainder of the price, and the plaintiff issued the defendant a personal note for the balance remaining due on May 10, 1987. The Bank note total including interest was for $38,502.72 and the note to the defendant was in the amount of $8,655.00. The car was then paid in full and became the property of the plaintiff. Thereafter the plaintiff started paying the Bank monthly, however he never took delivery of the car and he has paid sixteen payments of $802.14 each a total of $12,844.24. The bank returned the sixteenth payment to the plaintiff so the amount paid is reduced to $12,042.10. It was the oral understanding of the parties that delivery would not occur until the note for $8,655.00 was paid which was sixty days after date. The plaintiff failed to make payments to the Bank in December of 1987 and January 1988, however on February 2, 1988 he paid the Bank all the payments due to that date which they accepted. Thereafter, he continued his regular payments for the months of March, April and May 1988 and the Bank accepted them. On June 17, 1988, the plaintiff received a letter from the Bank verifying that the loan by the Bank had been paid in full. That CT Page 8571 balance to the Bank was paid by Motorcars, who sold the car to another buyer. In fact the Bank had been paid by Motorcars the sum of $21,337.48 which caused it to write to the plaintiff as hereinbefore stated. The Bank also furnished the plaintiff with a "Satisfaction of Lien" for the loan.
At the end of January 1988 the Bank ordered the car repossessed and turned the performance of that act over to Colonial Recovery Service who turned over an instrument entitled "Authorization to Repossess" dated June 28, 1988 to Motorcars. Emanuel Dragone acting for Motorcars spoke to Colonial's representative who did not retake the car when Dragone convinced him not to, when the plaintiff again promised payment. The car was never taken into Colonial's possession but was left where it was and where it had been at Motorcars' place of business. Thereafter on February 2, 1988 the Bank accepted the three monthly payments, due to that date, and accepted payment for the succeeding three months as they came due monthly when Motorcars paid the balance as stated. On January 12, 1988 the Bank had sent the required notice of default and stated that if the arrearage was not paid by January 22, 1988 that they might repossess the car. On February 1, 1988 they sent the plaintiff a notice that they had repossessed and that the car would be resold at private sale after February 13, 1988. They also sent notice on February 1, 1988 to Motorcars that it was in possession of the vehicle and that the customer could redeem by February 4, 1988 by paying the sum of $27,794.60. However, thereafter the Bank accepted payments bringing their note up to date as hereinbefore stated on February 2, 1988 and it accepted three subsequent monthly payments. On April 29, 1988, Motorcars' attorney sent the plaintiff a letter to perform his agreement, however, it did not identify the agreement. It is assumed she was referring to the note. On May 5, 1988 Motorcars sent its own letter to the plaintiff asking for the balance due on the note. Emanuel Dragone acting for Motorcars talked Colonial out of repossessing the car and it was never taken out of Dragone's possession where it had constantly remained since the date of sale to the plaintiff. Dragone spoke with the plaintiff who promised payment and as a result he talked Colonial into leaving the car alone. The mere act of handing Dragone a repossession receipt did not constitute the act of retaking the car in accordance with the usual requirement for repossession. No evidence was ever produced that the local police department was notified of the repossession where the owner did not know of it in accordance with 42-98(a) C.G.S.
Repossession is defined as "to take back as when a seller repossesses or takes back an item if the buyer misses an installment payment." Black's Law Dictionary, 5th Edition, Pg. 1169. "Term is commonly understood as acts resuming possession CT Page 8572 of property when purchaser fails to keep up payment on it." Black's Law Dictionary, supra pg. 1169. Not only did the Bank acting through Colonial fail to take possession or repossess by any act, since Dragone admits talking them out of it, but everyone in the case accepted the fact of no repossession and the Bank allowed the back payments, now overdue, to be paid up and took payments for three subsequent months. The defendant in its brief admits that the car was not repossessed, and it was not. Motorcars on April 28 had their lawyer write the plaintiff about the note due it and subsequently wrote their own letter demanding payment as hereinbefore stated. With no repossession and the subsequent proceedings of the Bank and Motorcars, it is difficult to understand legally how the Bank accepted the payment of the balance in June from Motorcars since the plaintiff was in good standing on his note to them. The plaintiff had purchased the car in 1987 when he issued his note to the Bank on a conditional bill of sale and paid cash and the balance by note to Motorcars. In June of 1988 the Bank gave up its conditional bill of sale and Motorcars converted the car to its use. It had no right to the car or to resell it. There is no evidence of a private sale by the Bank to Motorcars if there had been a repossession, which there was not, and with the plaintiff's notes the defendant had been paid in full with the understanding that the plaintiff would not take possession until its note was paid. In order for Motorcars to resell the car it had to take some legal action to get title to it, which it did not do. Conversion is ". . .a wrongful exercise of dominion over personal property of another." Brower v. Perkins, 135 Conn. 675,684. "Conversion has been defined as `an unauthorized assumption and exercise of right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. "`Bruneau v. W. W. Transportation Co., 138 Conn. 179,182. See Falker v. Samperi, 190 Conn. 412, 419. Horelik v. Roth, 15 Conn. App. 649, 652. All of the elements of a conversion are present in this case and the court finds that the defendant Motorcars did convert the car of the plaintiff. In so converting the car it breached the agreement between the parties and became liable on the second count. The third count is based on the Connecticut Uniform Trade Practice Act 42-110g C.G.S. "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice without necessarily having been previously considered unlawful offends public policy as it has been established by statute the common law or otherwise — Whether in other words it is within the prenumbra of some common law statutory or other established CT Page 8573 concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." Cheshire Mortgage Service Inc. v. Montes, 223 Conn. 88, 105. The defendant Motorcars' actions falls within the prenumbra of the common law and established concepts of unfairness. It received $3,000.00 cash from the plaintiff a greater amount from the Bank on the plaintiff's note to the Bank, a portion of which it repaid, and it sold the car to a third person for full value and from whom they received additional money. Such action offends public policy, is immoral, unethical, oppressive and unscrupulous and causes substantial injury to consumers. It appropriated the plaintiff's car to its own use.
The plaintiff is entitled to recover against the defendant Dragone Classic Motorcars Inc., on all three counts, conversion, breach of contract and a violation of CUTPA. The damages sustained by the plaintiff under the first count are the payments made by him $3,000.00 plus $12,042.10 for a total of $15,042.10, which is the value of the plaintiff in the car. The plaintiff claims the entire value of the car at $35,000.00, however he fails to deduct what was owed $21,337.48 and $8,655.00 plus interest which amounts to more than $29,992.48. The plaintiff sets the value of the car at the purchase price of $35,000.00, however there is no evidence of its value on the date of conversion. The same amount of damages may enter for the breach of contract. Under the third count, judgment should enter for $15,042.10 plus punitive damages of $5,000.00 and an attorney's fee of $4,500.00 which the court finds to be reasonable. Judgment may enter in accordance with the above, however the plaintiff is entitled to recover the sum of $15,042.10 as one single amount under all the counts. He is also entitled to the additional amounts under CUTPA entered in count three. Judgment may enter in accordance with the above together with costs.
The plaintiff has failed to allege a cause of action against Emanuel Dragone personally and he has failed to prove a cause of action against him. Judgment shall enter for Emanuel Dragone without costs.
IRVING LEVINE, STATE TRIAL REFEREE CT Page 8574